COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-10-00260-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Criminal Court at Law No. 2 |
| | § | |
| GERARDO VALDEZ, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC# 20100C03312) |
| | § | |

**O P I N I O N**

The State appeals and raises three issues challenging the trial court's suppression of

narcotics evidence.  Reversed and remanded.

**BACKGROUND**

Late in the evening of March 28, 2010, three El Paso Police Department Officers were

dispatched to a Ramada Inn to investigate a report regarding a subject with a gun.  The individual

who made the report was not identified, but claimed to be in Room 221 and reported seeing

individuals passing around a weapon.  When Officer James O'Connor knocked on the door of

Room 221 there was no response.  He asked one of the other officers to check with the hotel staff

in an attempt to locate the individual who made the report.

As Officer O'Connor began to walk away from Room 221, the door to Room 223 swung

open and a cloud of hazy smoke drifted from the room.  Based on his training and experience, he

recognized the odor of marijuana.  Officer O'Connor drew his weapon and moved into the

doorway, instructing the room's seven occupants to get down on the floor.  Officer O'Connor

radioed for help, and with the other two officers as back-up, entered the room and conducted a safety sweep. During the safety sweep, the officers saw loose marijuana on the bathroom counter as well as marijuana in a cigar dish. On the floor near the bed, also in plain view, was a black backpack which had been left open. The officers were able to see the handle of a Tec-9, .9 mm gun extending from the main compartment of the backpack.

Officer O'Connor identified the man and woman who had rented the hotel room and requested permission to search the room. The man and his girlfriend both consented to a search. During the search, the officers located a marijuana pipe, a bag of marijuana, and two bags of Ecstasy pills.

Appellee was one of the seven individuals in Room 223. When Officer O'Connor first approached Room 223, Appellee was standing in the center of the room near the closet and bathroom counter. Officer O'Connor observed Appellee hesitate when he ordered all the occupants to get on the floor, and he had to order Appellee onto the floor several times before Appellee complied. Prior to getting on the floor, Appellee concealed part of his body from the officer's view and made a gesture toward the closet. Based on Appellee's location relative to the drugs later found on the closet floor, as well as Appellee's hesitation in response to the instructions, Officer O'Connor concluded that Appellee had been in physical possession of drugs when the officer entered the room, and "tossed" them before raising his hands and lowering himself to the floor.

Appellee was arrested, and charged by information with possession of marijuana, less than two ounces. Defense counsel filed a motion to suppress the narcotics evidence collected at the hotel room on the basis that it was obtained as the result of warrant-less search and arrest.

During the suppression hearing, Appellee testified that the hotel room was not his, and that he was only in the room when the police arrived because he had "stopped by" on his way home. Following Appellee's testimony the State objected, arguing that Appellee lacked standing to challenge the search of the hotel room. The trial court overruled the objection. On August 6, 2010, the trial court entered an order granting the motion to suppress finding that Appellee had standing to contest the search of the hotel room, and that the seizure of Appellee's person by Officer O'Connor was not supported by probable cause.

The State has appealed the trial court's ruling, and presents three issues for this Court's review. In Issue One, the State contends that to the extent the trial court required the State to prove the elements of the charged offense rather than address the legality of the detention and seizure of the evidence, the ruling violated the bounds of suppression procedure and constituted an abuse of discretion. In Issue Two, the State contends the court erred by concluding that the evidence seized was the fruit of an unlawful detention because Appellee's detention was lawful and the marijuana was not the fruit of his detention. In Issue Three, the State argues that Appellee failed to establish that he had standing to challenge the search of the hotel room. We will address the issue of Appellee's standing first.

**ANALYSIS**

All three of the issues before the Court in this case deal with the trial court's ruling on a motion to suppress evidence. We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). A suppression ruling will stand unless it falls outside the bounds of reasonable disagreement. *See Janecka v. State*, 937 S.W.2d 456, 462 (Tex.Crim.App. 1996). While we defer to the trial court's

determination of historical facts where they are supported by the record, we review questions of law *de novo*. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Similarly, when a mixed question of law and fact does not turn on an evaluation of witness credibility and demeanor, we will apply a *de novo* standard. *See id*. When the trial court makes express findings of fact and conclusions of law, the reviewing court will defer to those findings, so long as they are supported by the record. *Guzman*, 955 S.W.2d at 89.

In Issue three, the State argues the trial court erred by ruling that Appellee had standing to challenge the search of the hotel room. As a purely legal question, the issue of standing is subject to *de novo* review. *See Guzman*, 955 S.W.2d at 89. The basis for all assertions of Fourth Amendment protection is proof of a "reasonable expectation of privacy." *Kothe v. State*, 152 S.W.3d 54, 59 (Tex.Crim.App. 2004). A defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. *Kothe*, 152 S.W.3d at 59. A court may only consider whether a substantive Fourth Amendment violation has occurred after the complainant establishes his privacy interest. *Id*. An individual has no standing to contest the legality of an invasion of another's personal rights. *Id*. On the other hand, a defendant can demonstrate a reasonable expectation of privacy by establishing that he had a subjective expectation of privacy in the place invaded that society is prepared to recognize as reasonable. *Granados v. State*, 85 S.W.3d 217, 223 (Tex.Crim.App. 2002). Several factors are utilized to determine whether a claim of privacy is objectively reasonable. *Granados*, 85 S.W.3d at 223. Those factors include: (1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the

right to exclude others from the place; (4) whether, prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to a private use; and, (6) whether his claim of privacy is consistent with historical notions of privacy. *Id*. While these factors are helpful, the list is not exhaustive, and none is dispositive in a particular case. *Id*. Any assertion of privacy in a place will be examined based on the totality of the circumstances surrounding the intrusion. *Id*.

The trial court's findings of fact, to which we must defer so long as they find support in the record, included three findings relevant to the question of Appellee's standing. *See Guzman*, 955 S.W.2d at 89. Specifically, it was another occupant, not Appellee, who had paid for the room; Appellee had not previously occupied the room, and had recently arrived "to visit a friend;" and Appellee was in the room only to visit, and did not intend to spend the night. These findings are supported by Appellee's testimony, and there is no contrary evidence in the record. When viewed in light of the factors listed above, we do not agree that these facts support the trial court's legal conclusion that Appellee had an objectively reasonable expectation of privacy in Room 223. Appellee had no property or possessory right over the room, he had no right to exclude others from the place, and neither Appellee nor the other members of the group took any precautions to ensure privacy prior to Officer O'Connor's arrival. While the facts do indicate that Appellee was legitimately in the room, they also indicate he was merely a temporary guest. Accordingly, the totality of the circumstances do not support a conclusion that Appellee had a reasonable expectation of privacy in the room. *See Granados*, 85 S.W.3d at 223.

Absent a reasonable expectation of privacy in Room 223, Appellee had no standing to challenge the seizure of any evidence obtained as a result of the search. The trial court's

determination to the contrary was in error. Issue Three is sustained.

While our holding as to Issue Three could end our review, we choose to address Issues One and Two. In its first issue, the State contends that the trial court abused its discretion by basing its ruling, in part, on an analysis of the sufficiency of the evidence supporting an element of the charged offense. In other words, the State contends that the trial court erred when it required the State to prove the elements of the charged offense during a suppression hearing.

A suppression hearing has a very limited purpose. *See State v. Iduarte*, 268 S.W.3d 544, 551 (Tex.Crim.App. 2008). It is intended to address preliminary matters- those matters that can be resolved before a trial on the merits. *Iduarte*, 268 S.W.3d at 551-52. As such, consideration of the sufficiency of the evidence as to an element of the offense is outside the bounds of a suppression hearing. *Woods v. State*, 153 S.W.3d 413, 415 (Tex.Crim.App. 2005).

Appellee was charged with possession of marijuana, less than two ounces. In a trial on the merits, the fact finder would be asked whether the State proved beyond a reasonable doubt that Appellee knowingly or intentionally possessed less than two ounces of marijuana. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.121 (West 2010). "Possession" is actual care, custody, control, or management. *See* TEX.PEN.CODE ANN. § 1.07(a)(39)(West Supp. 2011). In cases where the accused is not in exclusive control of the place where the contraband is located, "possession" can be established by independent facts and circumstances affirmatively linking the accused to the contraband. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex.Crim.App. 2005). Affirmative links can generate a reasonable inference that the accused knew of, and exercised some control over the contraband, thereby satisfying the "possession" **element** of the offense. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995).

Appellee's motion to suppress asked only that the trial court determine the legality of his detention and the search of the hotel room. Those issues deal with questions of reasonable suspicion and probable cause. *See Woods*, 153 S.W.3d at 415-16. During the hearing, however, much of Appellee's argument focused on whether or not the State could affirmatively link him to the drugs found in the room. As we have discussed, affirmative links evidence is evidence of an essential element of the offense with which Appellee was charged. *See Brown*, 911 S.W.2d at 747. A suppression hearing is not the proper vehicle to determine the sufficiency of the evidence in support of an element of the offense. *Iduarte*, 268 S.W.3d at 551-52. Whether or not the State could produce sufficient evidence "affirmatively linking" Appellee to the drugs was not a proper inquiry for a suppression hearing. *See State v. Jimenez*, 763 S.W.2d 436, 437 (Tex.App.--El Paso 1988, pet. ref'd). Because the trial court required the State to prove that Appellee *possessed* the marijuana, and effectively based its ruling on a determination of the sufficiency of the evidence, the trial court abused its discretion. Issue One is sustained.

The State's second issue challenges the trial court's ruling that there was no, "probable cause" for Appellee's "arrest." During the suppression proceedings, Appellee argued that he was illegally arrested and the hotel room illegally searched. The State argues that because Officer O'Connor had a reasonable suspicion to believe Appellee was engaging in illegal activity, the investigatory detention of Appellee was justified, and at that time, there was no arrest. The State characterizes the officers' actions as an investigative detention, supported by reasonable suspicion. Appellee characterizes the same actions as a warrant-less custodial arrest, and argues that the officers' actions were not supported by probable cause. Accordingly, our first inquiry must be to determine the type of interaction at issue. We review a trial court's legal

determinations of detention, reasonable suspicion, and probable cause *de novo*, while still granting deference to the court's factual findings. *State v. Sheppard*, 271 S.W.3d 281, 286-87 (Tex.Crim.App. 2008).

When an officer restrains a citizen's liberty by force or a show of authority, a Fourth Amendment seizure occurs. *See State v. Castleberry*, 332 S.W.3d 460, 466 (Tex.Crim.App. 2011). Whether that seizure constitutes an investigative detention or an arrest depends almost entirely on the circumstances surrounding the detention. *See Sheppard*, 271 S.W.3d at 290-91; *Dowhitt v. State*, 931 S.W.2d 244, 255 (Tex.Crim.App. 1996). The two categories exist on a spectrum, with the lesser-intrusive "investigative detention" on one end, and the ultimately-restrictive "arrest" on the other. As a result, it is difficult to define one without comparison to the other. *See Sheppard*, 271 S.W.3d at 290-91.

On the less-restrictive end of the spectrum, an investigative detention occurs when an individual is temporarily detained for investigative purposes. *See Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App. 1995). An individual has been "detained" when, under the circumstances, a reasonable person would not feel free to unilaterally terminate the encounter. *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex.Crim.App. 1999). By comparison, an "arrest," involves an almost total restraint on an individual freedom of movement. *See Dowhitt*, 931 S.W.2d at 255. To distinguish between investigative detentions and arrests, courts must objectively consider all of the relevant facts surrounding the interaction.[1] *See Sheppard*, 271

---

[1] There are several, non-exclusive factors which are useful in variety factual scenarios: (1) the amount of force displayed; (2) the duration of the detention; (3) the location of the investigation; (4) whether or not the individual is transported away from the original location; and, (5) the officer's expressed intent. *See Sheppard*, 271 S.W.3d at 291.

S.W.3d at 291; *Dowhitt*, 931 S.W.2d at 255.  The greater the restraint, the more likely an interaction is properly categorized as an arrest.  *See Sheppard*, 271 S.W.3d at 291.  In addition, given the specific and relatively limited  purpose of an investigative detention- to safeguard the officer, and ensure the individual's continued presence- an arrest is often evident when the degree of restraint used is more than would be necessary to fulfill the goals of the investigation.  *See id*.

In the case before us, the trial court concluded that there was, "no probable cause . . . for the arrest of [Appellee]."  Given the totality of the circumstances at the time Officer O'Connor arrived at Room 223, we disagree with the court's conclusion that an arrest took place, and hold the interaction here is properly characterized as an investigative detention.  When Officer O'Connor arrived at Room 223, he drew his weapon and ordered the seven people inside the room to get on the floor.  At that point, a reasonable person could certainly conclude that he was not free to leave the location, but the circumstances do not rise to the level of an arrest.  Officer O'Connor was at the hotel to investigate a report of a subject with a gun.  While investigating the report, the door to Room 223 opened in a smokey haze.  Through his training and experience, the officer recognized the odor of marijuana.  As the officer stood in the doorway, he counted seven people in the room.

Under these circumstances, the officer's actions in drawing his weapon, and ordering the occupants, including Appellee, to the floor were reasonable and necessary for the officer's safety, and to further investigate obvious criminal activity.  There is no evidence in the record to support the conclusion that Appellee was under arrest at that time.

Furthermore, because Appellee's detention did not rise to the level of an arrest, the trial

court's conclusion that there was no probable cause is misplaced. An investigative detention must be supported by reasonable suspicion. *York v. State*, 342 S.W.3d 528, 535 (Tex.Crim.App. 2011). Reasonable suspicion exists when the investigating officer is aware of, "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged, or is (or soon will be) engaging in criminal activity." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001). The standard disregards the subjective intent or motive of the officer, and limits the inquiry to the objective justification for the detention. *State v. Elias*, 339 S.W.3d 667, 674 (Tex.Crim.App. 2011). Whether or not an officer has reasonable suspicion to detain an individual for further investigation is determined from the facts and circumstances known to the officer at the time of the detention. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App. 2010).

When Officer O'Connor arrived at Room 223, he had information that there was a gun in the area which was being passed around, and he encountered a group of people who were, or had recently been smoking marijuana in the hotel room. His actions in drawing his weapon and ordering the occupants to get on the floor, constituted an investigatory detention which was supported by reasonable suspicion.

In so holding, we do not disregard the trial court's final three findings of fact. Findings Eleven through Thirteen state:

11.     [Appellee] had not previously occupied Room 223 because he recently had arrived to visit with a friend before Officer O'Connor arrived;

12.     [Appellee] was just visiting a friend, with no intention of spending the night;

13.     According to Officer O'Connor's testimony, [Appellee] did not smell of

marijuana nor was he under the influence of marijuana and denied ownership of the narcotic.

In those findings, the court seems to indicate that it found credible Appellee's testimony regarding his reason for being in the room and his lack of participation in criminal activity. While we generally defer to the trial court's findings, in this case Findings Eleven through Thirteen are outside our consideration as they are not relevant to the issue of the legality of the investigative detention. *See Guzman*, 955 S.W.2d at 89. Instead they focus whether or not Appellee may have been in possession of the contraband located in the room, which is an issue for trial.[2] Therefore, having concluded that the trial court erred by characterizing the detention as an arrest unsupported by probable cause, and because the detention was supported by reasonable suspicion, Issue Two is sustained.

## CONCLUSION

Having sustained Issues One, Two, and Three, the order granting Appellee's motion to suppress is reversed, and the case is remanded for proceedings consistent with this opinion.

November 9, 2011

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)

---

[2] They are also, for the reasons noted above, relevant to the issue of standing.