

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00633-CR

Ex Parte Fernando Paramo **HERNANDEZ**

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR1274
The Honorable Andrew Wyatt Carruthers, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  April 1, 2015

AFFIRMED

Fernando Paramo Hernandez appeals from an order denying his application for writ of habeas corpus in which he asserted a bare claim of actual innocence based solely on newly discovered evidence. We affirm.

### BACKGROUND

On February 15, 2012, Hernandez was indicted for possession of a controlled substance. The indictment alleged that, on or about September 3, 2011, Hernandez intentionally and knowingly possessed cocaine in an amount of one gram or more but less than four grams. On March 19, 2013, Hernandez pled no contest to the allegations in the indictment. The trial court deferred adjudication and placed Hernandez on community supervision for two years.

On January 21, 2014, Hernandez filed an application for writ of habeas corpus pursuant to article 11.072 of the Texas Code of Criminal Procedure.[1] Hernandez's application summarized the facts underlying his conviction as follows:

> On September 03, 2011, [Hernandez] was encountered by a San Antonio Police officer while asleep in the driver's seat of his vehicle . . . at a strip mall. The officer awoke [Hernandez], . . . opened his driver's door, and ordered [him] to exit the vehicle. The officer notes in his report that [Hernandez] exhibited signs of having been drinking alcohol, and that he saw an open container of "Bud Light," in the center console of the vehicle. [Hernandez] was arrested for public intoxication. Following his arrest, the officer searched [Hernandez's] wallet, and found a small cellophane with a white powder, which after application of a reagent test, tested positive for cocaine. [Hernandez] was arrested for possession of cocaine, which resulted in his plea of no contest to said charges.

In his habeas application, Hernandez alleged that his conviction had adversely affected his immigration status and that he had been ordered deported. Hernandez further alleged that after he was ordered deported, his brother-in-law, Enrique D. Dominguez, told him that he had put the cocaine in Hernandez's wallet without Hernandez's knowledge.

The trial court held a hearing on Hernandez's application. At the hearing, the trial court took judicial notice of the trial court's file in the underlying case. The only other evidence presented at the hearing was Dominguez's live testimony. Hernandez did not testify in person or by affidavit.

According to Dominguez's testimony, he and Hernandez went to a neighborhood bar to discuss Hernandez's marital problems on the night of September 2, 2011. While seated at the bar, a woman approached Dominguez on his left side and whispered in his ear. The woman asked Dominguez if he and Hernandez needed "a pick-me-up." Dominguez whispered back to her, asking if she was referring to cocaine. Then Dominguez pulled a $50.00 bill out of his left pocket

---

[1]Article 11.072 of the Texas Code of Criminal Procedure establishes the procedures for a writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision. TEX. CODE CRIM. PROC. ANN. art. 11.072, § 1 (West Supp. 2014).

and handed it to the woman. The woman handed Dominguez a plastic bag with cocaine in it, and Dominguez put the plastic bag in his pocket. When Dominguez purchased the cocaine, Hernandez was seated on his right side. According to Dominguez, Hernandez was not aware that Dominguez had purchased the cocaine.

Shortly thereafter, Dominguez paid the bar tab and he and Hernandez left the bar. Both were inebriated. Hernandez could barely walk. Once outside, Hernandez insisted on paying the bar tab. Hernandez pulled out his wallet and handed it to Dominguez, who assured Hernandez that he would take money from the wallet for the bar tab. Dominguez then put Hernandez's wallet in his front pocket.

Dominguez helped Hernandez walk to his car. Hernandez sat in the driver's seat and fell asleep. Dominguez went to the passenger's side of the vehicle and sat down inside the car. While Hernandez was sleeping, Dominguez used some but not all of the cocaine. Dominguez then decided to walk to his house, which was about two miles away. Concerned that he might be stopped by the police while he was walking home, Dominguez put the cocaine in Hernandez's wallet, and put Hernandez's wallet in the car's center console. When Dominguez left the car, Hernandez was seated in the driver's seat, sound asleep. According to Dominguez, Hernandez was not aware that Dominguez had put the cocaine in Hernandez's wallet.

On September 3, 2011, between 6:30 and 7:30 a.m., Dominguez received a call from his sister-in-law, who told him that Hernandez had been arrested. His sister-in-law was crying and Dominguez agreed to help her get Hernandez released from jail. Dominguez hoped that the arresting officer had not found the cocaine, but soon learned that he had. Shortly after Hernandez's arrest, Dominguez also learned that Hernandez was charged with possession of cocaine; however, Dominguez did not tell Hernandez, or anyone else for that matter, that he had put the cocaine in Hernandez's wallet.

Finally, Dominguez testified that he and Hernandez did not discuss the events of September 3, 2011, in any detail after Hernandez's arrest. Hernandez told Dominguez that he had a lawyer and everything was going to be alright. After learning that Hernandez was going to be deported because of the conviction and that Hernandez's son (and Dominguez's nephew) would be without his father, Dominguez decided to tell Hernandez that he had put the cocaine in Hernandez's wallet.

The trial court denied Hernandez's application and adopted the findings of fact and conclusions of law proposed by the State. Among the findings of fact adopted by the trial court were the following:

m.    Dominguez's testimony that [Hernandez] was unaware that he purchased the cocaine while [Hernandez] was seated next to him at the bar is not credible[;]

n.    Dominguez's testimony that [Hernandez] had no knowledge that he placed the cocaine in [Hernandez's] wallet is not credible[; and]

o.    Dominguez's testimony that he and [Hernandez] did not discuss the events of September 3, 2011, after [Hernandez's] arrest is not credible.

Among the conclusions of law adopted by the trial court were the following:

8.    [Hernandez] has not established by clear and convincing [evidence] that . . . no reasonable jury could have found [Hernandez] guilty in light of the new evidence[;]

9.    [Hernandez] has not established the "newly discovered evidence" could not have been known even with the exercise of due diligence[;]

10.   [Hernandez] has not established that he exercised due diligence at the time of his plea to discover his brother-in-law placed the cocaine inside his wallet[; and]

11.   Even assuming Dominguez's testimony is "newly discovered evidence," when weigh[ed] against the inculpatory evidence of a no contest plea and the stipulated facts in the police report, the new evidence does not unquestionably establish [Hernandez's] innocence.

On appeal, Hernandez challenges some of the trial court's fact findings and credibility determinations. Hernandez also argues the trial court erred in concluding that he failed to meet his burden to produce newly discovered evidence that unquestionably established his innocence.

**APPLICABLE LAW AND STANDARD OF REVIEW**

"Establishing a bare claim of actual innocence is a Herculean task." *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006). This is so because "[a]ny person who has once been finally convicted in a fair trial should not be permitted to wage, and we do not permit him to wage, a collateral attack on that conviction without making an exceedingly persuasive case that he is actually innocent." *Ex parte Elizondo*, 947 S.W.2d 202, 206 (Tex. Crim. App. 1996). The task is equally daunting in the context of a plea of guilty or nolo contendere. Courts must give great respect to knowing, voluntary, and intelligent pleas of guilty. *Ex parte Tuley*, 109 S.W.3d 388, 391 (Tex. Crim. App. 2002).

The burdens of production and persuasion are on the habeas applicant. *Ex parte Thompson*, 153 S.W.3d 416, 427 (Tex. Crim. App. 2005) (Cochran, concurring). When asserting a claim of actual innocence based on newly discovered evidence, the evidence presented by the habeas applicant must constitute affirmative evidence of the applicant's innocence. *Ex parte Franklin*, 72 S.W.3d 671, 678 (Tex. Crim. App. 2002). Not only must the habeas applicant make a truly persuasive showing of innocence, he must also prove that the evidence he relies upon is "newly discovered" or "newly available." *Brown*, 205 S.W.3d at 545. To succeed in an actual innocence claim, the habeas applicant must demonstrate by clear and convincing evidence that no reasonable juror would have found him guilty in light of the new evidence. *Ex parte Navarijo*, 433 S.W.3d 558, 560 (Tex. Crim. App. 2014).

When, as here, the trial court has adopted written findings and conclusions, the appellate court reviews the habeas corpus order for an abuse of discretion. *Ex parte Skelton*, 434 S.W.3d

709, 717 (Tex. App.—San Antonio 2014, pet. ref'd) (citing *Ex parte Garcia*, 353 S.W.3d 785, 787-88 (Tex. Crim. App. 2011)). In an article 11.072 case, the trial court is the sole fact finder. *Garcia*, 353 S.W.3d at 788; *Skelton*, 434 S.W.3d at 717. Because the trial court in an article 11.072 habeas proceeding is the sole finder of fact, the reviewing appellate court affords almost total deference to its determinations of historical fact that are supported by the record, especially when those findings rely on evaluations of a witness's credibility and demeanor. *Garcia*, 353 S.W.3d at 787; *Skelton*, 434 S.W.3d at 717. The trial court's application of the law to the facts is accorded the same deference if it turns on points of evidence related to credibility and demeanor. *Skelton*, 434 S.W.3d at 717. However, if the resolution of those ultimate questions turns only on the application of legal standards, the trial court is not in an appreciably better position than the appellate court to make that determination, and our review is de novo. *Id.*

### ALLEGED ERRORS IN THE FINDINGS OF FACT

In his first issue, Hernandez argues that because the trial court made "numerous errors" in its findings of fact, we are entitled to give less deference to its findings, including its findings concerning Dominguez's credibility. We reject this argument for several reasons.

To support his argument, Hernandez cites *Ex parte Harleston*, 431 S.W.3d 67, 68 (Tex. Crim. App. 2014), a case in which the habeas applicant, who had been convicted of aggravated assault of a child, claimed he was actually innocent based on the victim's alleged recantations. The trial court adopted findings of fact that the victim's recantations were credible and recommended that the Court of Criminal Appeals grant habeas relief. *Id.* at 72-75. After independently reviewing the record, the Court of Criminal Appeals rejected the trial court's findings that the victim's recantations were credible. *Id.* at 69. *Harleston* was a habeas proceeding under article 11.07 of the Texas Code of Criminal Procedure. *Id.* at 70. In an article 11.07 case, the Court of Criminal Appeals is the ultimate fact finder. The case before us, however, involves a habeas application

under article 11.072 of the Texas Code of Criminal Procedure, where the trial court is the *sole* fact finder. "'There is less leeway in an article 11.072 context to disregard the findings of a trial court' than there is in an article 11.07 habeas case, in which the Court of Criminal Appeals is the ultimate fact finder." *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd) (quoting *Garcia*, 353 S.W.3d at 788).

Next, Hernandez complains about findings that he claims are unsupported by the record. First, Hernandez complains that the trial court erred in finding that his wallet was not in the car's center console at the time of his arrest. This finding, however, is supported by the police report, which indicates the arresting officer found the wallet while conducting a search of Hernandez's person rather than a search of his car.[2] Second, Hernandez complains the trial court erred by finding that there was an open beer bottle in the car's center console. Again, this finding is supported by the police report, which says that at the time of Hernandez's arrest "an open Budweiser bottle" was in the car's "center console."

Hernandez also complains that the trial court erred in finding that Dominguez's testimony contradicted some of the facts in the police report. The trial court found that Dominguez made no mention of an open beer bottle in the car's center console, and that Dominguez stated that he put Hernandez's wallet in the center console. As the fact finder, the trial court was entitled to draw reasonable inferences from the facts before it, and we must defer to these inferences. *See Amador v. State*, 221 S.W.3d 666, 674-75 (Tex. Crim. App. 2007). We conclude that the trial court's findings that Dominguez's testimony contradicted some of the facts in the police report are supported by the record.

---

[2]The police report was part of the stipulated evidence submitted in support of Hernandez's plea.

In addition to its findings that Dominguez's testimony contradicted facts in the police report, the trial court made express findings concerning Dominguez's credibility. The trial court found that Dominguez was not credible when he testified that (1) Hernandez was unaware that Dominguez purchased the cocaine at the bar, (2) Hernandez had no knowledge that he placed the cocaine in Hernandez's wallet, and (3) Hernandez did not discuss with Dominguez the events of September 3, 2011, prior to entering his plea. Hernandez complains about each of these express credibility determinations, essentially arguing that the trial court acted unreasonably in disbelieving these parts of Dominguez's testimony.

When the trial court is the sole finder of fact, it may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). "This is so because it is the trial court that observes first hand the demeanor and the appearance of a witness, as opposed to an appellate court which can only read an impersonal record." *Id*. Furthermore, when a trial court makes an explicit credibility finding, the appellate court must give deference to that credibility determination. *State v. Sheppard*, 271 S.W.3d 281, 286 (Tex. Crim. App. 2008). In an article 11.072 proceeding, "the trial judge may believe any or all of a witness's testimony." *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013).

Here, the trial court chose to disbelieve crucial parts of Dominguez's testimony. This was within the trial court's exclusive province as fact finder. In a habeas corpus proceeding, "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). And, as the reviewing appellate court, we must defer to the trial court's credibility determinations in this case. *See Sheppard*, 271 S.W.3d at 286. We overrule Hernandez's first issue.

## "NEWLY DISCOVERED EVIDENCE"

In his third issue, Hernandez argues the trial court erred in concluding that Dominguez's testimony was not "newly discovered evidence."

The term "newly discovered evidence" refers to evidence that was not known to the applicant at the time of trial and could not be known to him even with the exercise of due diligence. *Brown*, 205 S.W.3d at 545. In other words, the applicant cannot rely upon evidence or facts that were available to him at the time of his plea. *Id*. In analyzing whether a habeas applicant met his burden to establish that the evidence he relies on is "newly discovered evidence," we apply the standard used in evaluating motions for new trial. *State v. Nkwocha*, 31 S.W.3d 817, 821 (Tex. App.—Dallas 2000, no pet.). "An accused may not secure a new trial by failing to call a witness whose identity is known, and whose knowledge of the case might have been known prior to trial in the exercise of reasonable diligence." *Fuqua v. State*, 457 S.W.2d 571, 572 (Tex. Crim. App. 1970).

In this case, whether Hernandez established that Dominguez's testimony was "newly discovered evidence," turns on an evaluation of credibility and demeanor. "We . . . afford great deference to the habeas court's application of the law to the facts, to the extent that the resolution of the ultimate question turns on an evaluation of credibility and demeanor." *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd). The trial court concluded that Hernandez failed to make a showing that Dominguez's testimony could not have been known to him even in the exercise of diligence. In his testimony, Dominguez testified that he and Hernandez had a close relationship: they discussed private matters concerning Dominguez's marriage and their families socialized together once every two weeks. Dominguez also testified that he helped Dominguez's wife obtain Dominguez's release from jail after his arrest. Against this backdrop, the trial court simply did not believe that Hernandez could not have discovered Dominguez's

testimony prior to entering his plea. Furthermore, Hernandez presented no other evidence showing that he exercised any diligence to obtain the evidence in question prior to entering his plea. We conclude the trial court did not err in concluding that Hernandez failed to meet his burden of demonstrating that Dominguez's testimony was "newly discovered evidence." We overrule Hernandez's third issue.

## UNQUESTIONABLY ESTABLISHED INNOCENCE

In his second issue, Hernandez argues the trial court erred in concluding that he failed to unquestionably establish his innocence.

"To merit relief, the [habeas] applicant bears the burden of showing that the newly discovered evidence unquestionably establishes his or her innocence." *Thompson*, 153 S.W.3d at 417. In evaluating a claim that newly discovered evidence proves the applicant to be innocent of a crime for which he was convicted, the trial court must assess the probable impact of the newly available evidence upon the persuasiveness of the State's case as a whole. *Elizondo*, 947 S.W.2d at 206. Thus, the trial court necessarily weighs the newly discovered evidence against the evidence of guilt adduced at trial. *Id*. When an applicant has pleaded guilty or nolo contendere, the trial court considers the plea, along with any stipulated evidence submitted in support of the plea, in weighing the old evidence against the new evidence. *Mello*, 355 S.W.3d at 831. To be entitled to relief, the habeas applicant must demonstrate that no reasonable juror would have convicted him in light of the new evidence. *Navarijo*, 433 S.W.3d at 571-72 (citing *Elizondo*, 947 S.W.2d at 209).

In evaluating this issue on appeal, our role is to weigh Dominguez's testimony against the evidence of guilt adduced at the plea hearing and evaluate the probable impact of this evidence on the State's case as a whole. *See id*. at 572; *Elizondo*, 947 S.W.2d at 206. The record shows that Hernandez pled nolo contendere to the offense of possession of a controlled substance. The stipulated evidence submitted in support of Hernandez's plea shows that Hernandez was arrested

for public intoxication, and during a search incident to the arrest, the arresting officer found cocaine in Hernandez's wallet. The stipulated evidence also shows that, at the time of the arrest, Hernandez's wallet was in Hernandez's actual possession and control. At the habeas hearing, Dominguez testified that he purchased the cocaine and put it in Hernandez's wallet without Hernandez's knowledge. Although Dominguez's testimony is favorable to Hernandez, it does not nullify the State's case as a whole. Thus, we cannot say that Hernandez established by clear and convincing evidence that no reasonable juror would have convicted him in light of Dominguez's testimony. *See Navarijo*, 433 S.W.3d at 571-72.

In sum, even if Hernandez had shown that Dominguez's testimony was "newly discovered evidence," we conclude Hernandez failed to meet his burden to show that this evidence unquestionably established his innocence. *See id*. at 572. We overrule Hernandez's second issue.

## CONCLUSION

The trial court's order denying habeas relief is affirmed.

Karen Angelini, Justice

Do not publish