

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-793-07 & 794-07

### THE STATE OF TEXAS

### v.

### MICHAEL HARVEY SHEPPARD, Appellee

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TWELFTH COURT OF APPEALS
### ANDERSON COUNTY

COCHRAN, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and HOLCOMB, JJ., joined. KELLER, P.J., concurred in the result. MEYERS, J., filed a dissenting opinion.

### OPINION

Appellee, Michael Harvey Sheppard, was charged with possession of methamphetamine and possession of chemicals with intent to manufacture methamphetamine. He filed a motion to suppress evidence that the trial court granted after an evidentiary hearing. The State appealed, arguing that the officer's conduct was reasonable under the Fourth Amendment. The specific question before us is whether a person is

"arrested" for purposes of the Fourth Amendment if he is temporarily handcuffed and detained, but then released.[1] The answer is no–a person who has been handcuffed has been "seized" and detained under the Fourth Amendment, but he has not necessarily been "arrested." The trial judge was mistaken in his belief that a temporary investigative detention equals an arrest under federal or Texas search and seizure law. The court of appeals then mistakenly speculated about possible unexpressed fact findings or credibility assessments by the trial judge.[2] Because the trial judge did not include these possible credibility assessments or new facts in his express written findings, it was error for the court of appeals to create and consider them.[3] We therefore reverse the judgment of the court of appeals and remand this case to the trial court for further proceedings.

## I.

At the hearing on appellee's motion to suppress, Anderson County Deputy Sheriff John Smith testified that he received a dispatch call about an assault at Lot No. 14 in Red

---

[1] The State's two questions for review ask the following:
1)    For the purpose of Fourth Amendment search and seizure jurisprudence, does Vernon's Ann. C.C.P. Art. 15.22 determine the circumstances that constitute an "arrest"?
2)    Did the court of appeals err by concluding that circumstances that would constitute a "temporary detention" under Fourth Amendment search and seizure jurisprudence must be considered to be an "arrest" because of the provisions of Vernon's Ann. C.C.P. Art. 15.22?

[2] *State v. Sheppard*, No. 12-06-00259-CR & 12-06-00260-CR, 2007 Tex. App. LEXIS 3325 (Tex. App.–Tyler 2007) (not designated for publication).

[3] The court of appeals addressed five distinct legal issues. On each one, it agreed that the objective facts supported the reasonableness of the officer's conduct. Therefore, it assumed that, despite the trial judge's factual findings, he must have disbelieved the officer, because otherwise the trial judge's ruling on the law was erroneous.

Rock Ranch. He met the complainant, Arthur Schneider,[4] at a nearby convenience store. Mr. Schneider explained that he and another friend, Elizabeth Miley, had been "sitting around" in appellee's trailer "doing some speed" when appellee threatened him with a knife. Deputy Smith then followed Mr. Schneider to appellee's trailer to investigate.

Deputy Smith knocked on the door and, when appellee opened it, the first thing the officer noticed was a "very strong chemical odor coming out of the trailer."[5] On cross-examination, Deputy Smith testified that he had a reasonable suspicion that appellee was engaging in criminal activity at the time he opened his front door because of that strong chemical odor coming out of the house. Deputy Smith then frisked appellee and found a large folding knife in his front pocket. The officer handcuffed appellee and told him that "he was just being detained at the time until [Deputy Smith] could secure the scene." He testified that he handcuffed appellee for "officer safety" while he walked through the trailer to make sure that there was no one else inside. He explained that he was trying to account for Elizabeth Miley, the third person that Arthur Schneider had told him about: "To make sure they weren't laying in [there] dead, stabbed to death. There had already been a complaint of someone pulling a knife." As Deputy Smith walked through the trailer, he saw, in plain view, a small dining table that had a clear plastic bag on it, a purse with some needles in it,

[4] Several of the participants' names are spelled in various ways by the different parties and courts. We use the names as spelled by the court reporter.

[5] Deputy Smith did not further describe this "chemical odor" in his testimony, but after securing the scene, he called for Deputy Smith to come and assist him "in reference to a possible meth lab."

and an open orange box with a powdery substance in it.

After Deputy Smith was assured that no one else was inside, he walked back out and released appellee from the handcuffs. He called the drug task force to come because he didn't know if this was a meth lab, and he didn't know anything about meth labs. He asked appellee if he would sign a consent to search form. Appellee did so. They both waited outside until the drug task-force members arrived and began to search the trailer. They discovered that the strong chemical smell had come from a pitcher underneath the sink with crushed-up pills and some type of solvent or acetone in it. The officers also found methamphetamine and a variety of methamphetamine-manufacturing materials.

After hearing the evidence, the trial judge asked the prosecutor and defense counsel a number of questions concerning the legal principles involved, and ultimately he granted the motion to suppress, stating that "the bottom line for me . . . that I'm sitting up here trying to defin[e] is does this constitute a reasonable search?"[6] The trial judge then entered written findings of fact and conclusions of law that were based upon legal principles and the application of those principles to the officer's testimony. They were not based on the officer's credibility or any disputed evidence.[7]

---

[6] The trial judge correctly identified the controlling legal issue: Taking into account the totality of the circumstances, was Officer Smith's conduct and search constitutionally reasonable?

[7] The trial court's Finding of Facts were as follows:
1)  On November 28, 2004, Anderson County Sheriff's Deputy John Smith responded to a call and met complainant Arthur [Schneider] at the nearby convenience store when Mr. [Schneider] informed the deputy that the defendant had threatened him with a knife.

## II.

The State appealed, and the Tyler Court of Appeals upheld the trial judge's ultimate

---

2)     Complainant further informed Deputy Smith that [Elizabeth] Miley was also present at the house and everyone had been doing drugs.
3)     Deputy Smith went to defendant's house and knocked on the door.
4)     Defendant answered the door and was identified.
5)     Deputy Smith noticed a strong chemical odor coming from the residence.
6)     Deputy Smith searched defendant and found a legal large folding knife in defendant's pocket.  Deputy Smith claimed the search was for officer's safety but gave no valid reasons or basis for his concern.
7)     Defendant was placed in handcuffs and informed that he was not under arrest but only being detained until the scene could be secured.
8)     Deputy Smith did not have specific articulable facts to support a reasonable suspicion to believe the defendant was engaged in criminal activity to justify the search of defendant or placing him in handcuffs.
9)     Deputy Smith checked the residence for "officer safety" and for welfare concerns due to complainant stating there were three people present.
10)    Deputy Smith searched in areas where people could be found.
11)    While searching, Deputy Smith saw a syringe with brownish liquid lying in plain view in an open purse.
12)    Upon finding no other individuals in the house, Deputy Smith released defendant from restraints as he had no probable [cause] to arrest.  Deputy Smith asked for and received written consent to search the residence.
13)    Deputy Smith doesn't remember when he read defendant his *Miranda* warnings-whether either before or after signing the consent to search.
14)    Sergeant Rodney Smith and Assistant and Brenda Gray, members of the Dogwood Trails Narcotics Task Force, arrived and conducted the search.

The trial court's Conclusions of Law were as follows:

1)     The "pat down or frisk of defendant" was without justification and therefore illegal.
2)     The handcuffing of defendant constituted an illegal warrantless arrest of defendant.
3)     Deputy Smith's original entry into the residence was a search without probable cause and therefore illegal.
4)     Without adequate proof the defendant was *Mirandized* prior to being asked about to consent to the search of his residence the conversation requesting such consent constituted illegal custodial interrogation.
5)     There is inadequate proof to show that the taint of the original arrest had been attenuated before the written consent to search was executed.
6)     For both reasons stated above, the written consent to search was therefore invalid.
7)     The search of the residence is therefore found to be illegal and any and all evidence found as a result thereof is suppressed and deemed inadmissible at trial.

ruling, although it disagreed with a number of his legal conclusions.[8]  The court of appeals first noted that there were sufficient "objective facts that could have supported a frisk and detention."[9]  Mr. Schneider had called the police and reported that appellee threatened him with a knife–a felony offense of aggravated assault with a deadly weapon.[10]  Mr. Schneider also reported that the assault occurred while he, appellee, and a woman, Elizabeth Miley, were sitting around "doing speed"–using methamphetamine–another felony offense.  Deputy Smith and Mr. Schneider drove separately to appellee's house to investigate.  When appellee opened the door, Deputy Smith smelled the strong odor of chemicals.  This strong odor corroborated Mr. Schneider's description of the trio "doing speed."  Deputy Smith then frisked appellee because Mr. Schneider had said that appellee had threatened him with a big knife.   As the court of appeals stated,

> If believed, these facts could support the conclusion that Appellee was armed and presented a danger as well as a reasonable suspicion that he was involved in criminal activity.[11]

But, because the trial judge made the legal conclusion that "[t]he 'pat down or frisk of defendant' was without justification and therefore illegal," the court of appeals reasoned that

---

[8] *State v. Sheppard*, No. 12-06-00259-CR & 12-06-00260-CR, 2007 Tex. App. LEXIS 3325 (Tex. App.–Tyler 2007) (not designated for publication).

[9] *Id.* at *9.

[10] *Id.*

[11] *Id.*

the trial judge must not have believed Deputy Smith.[12]  That is not necessarily so.  In fact there is nothing in the hearing record or the findings of fact that would indicate that the trial court did not believe Deputy Smith or his factual testimony.[13]  The written factual findings are entirely consistent with Deputy Smith's testimony.

When the trial court makes explicit findings of fact, as was done in this case, those are the facts to which we must give deference.  And when a trial court makes an explicit credibility finding, we must give deference to that credibility determination.  But we cannot conjure up new and different factual or credibility findings when the trial court has made his findings explicit.  That is precisely the point of having trial judges make express factual findings: the appellate courts will not have to guess at what the trial court's factual findings and credibility assessments were.  In this case, it is clear that the trial court simply did not believe that what Deputy Smith did was reasonable under the Fourth Amendment.  The trial

---

[12] *Id.*

[13] Although the court of appeals noted that the trial court said, "I'm having a problem with your officer's safety issue," during the attorneys' post-testimony arguments, the problem he had was with the prosecutor's legal position, not the believability of Officer Smith's testimony.

> Court:   A person is arrested when he's been placed under restraint or taken into custody by an officer or a person executing or a person arresting without a warrant.  I thought the old restraint issue is if you detain somebody, they weren't free to go, that was sufficient to argue an arrest, isn't it?
>
> State:   He was only detained, Judge, for officer's safety.  He was not under arrest.
>
> Court:   I'm having a problem with your officer's safety issue.
>
> State:   They don't release people that they arrest.  That's the whole thing, he was released.
>
> Court:   What do you mean they don't–
>
> State:   Judge, the officer testified that he released him from his handcuffs and he was not under arrest, so even saying that he was arrested–
>
> Court:   Why didn't he ask for the consent when he originally walked up there?

court was mistaken on the law.

Appellate courts review the legal determination of detention, reasonable suspicion, and probable cause under the Fourth Amendment *de novo* while granting great deference to a trial court's factual findings.[14] The United States Supreme Court has long held that an officer has the right to briefly detain and investigate a person when the officer has a reasonable suspicion that the person is involved in criminal activity.[15] That officer may also conduct a limited "pat down" of a person if the officer has a reasonable belief that the person is armed and dangerous.[16]

Here, Deputy Smith had two distinct bases for a Fourth Amendment "pat down": he was investigating a complaint of a recent assault with a large knife, and he was investigating

---

[14] *Ornelas v. United States*, 517 U.S. 690, 697 (1996); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) ("the question of whether a given set of historical facts amount to a consensual police-citizen encounter or a detention under the Fourth Amendment is subject to *de novo* review because that is an issue of law–the application of legal principles to a specific set of facts."); *Kothe v. State,* 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004) ("questions involving legal principles and the application of law to established facts are properly reviewed *de novo*" in deciding the question of the "reasonableness" of a detention for purposes of the Fourth Amendment).

[15] *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

[16] *Id.* at 27-28 (officers could reasonably conclude that the offense of robbery would involve use of weapons, although officer did not observe a weapon or any physical indication of a weapon); *see also Carmouche v. State*, 10 S.W.3d 323, 329-30 (Tex. Crim. App. 2002) ("Law enforcement personnel may conduct a limited search for weapons of a suspect's outer clothing, even in the absence of probable cause, where an officer reasonably believes that the suspect is armed and dangerous.").

Mr. Schneider's admission of "doing speed" at appellee's home.[17]   According to the trial judge's explicit factual finding, "Deputy Smith noticed a strong chemical odor coming from the residence."  Officer Smith was not required to testify that he was "afraid" of appellee or explicate each fact that led him to frisk appellee for "officer safety."[18]   The trial court's factual findings include a statement that Deputy Smith "gave no valid reasons or basis for his concerns" before frisking appellee.  He did not need to; the objective facts that the trial court found speak for themselves: a reasonable and prudent police officer investigating a recent assault involving a knife in a residence where the alleged attacker and victim were using methamphetamine would conduct a brief "pat down" or frisk to see if the person still had that weapon on him.[19]  As the court of appeals correctly noted, an "officer safety" frisk is based upon objective criteria, not upon the officer's subjective state of mind or his asserted rationale:

> To support a protective frisk or detention, there must be facts that, when reviewed under an objective standard, would cause a reasonably cautious person to believe that the action taken was reasonable or that the person

___

[17] *See Carmouche*, 10 S.W.3d at 330 (when officers stopped defendant based upon an informant's tip that he was carrying cocaine, it was reasonable for officers to conduct a *Terry* frisk for weapons; "Since weapons and violence are frequently associated with drug transactions, the officers reasonably believed that the individual[] with whom they were dealing [was] armed and dangerous.") (internal quotations and citation omitted).

[18] *Griffin v. State*, 215 S.W.3d 403, 409-10 (Tex. Crim. App. 2006) ("We decline to hold that it is objectively unreasonable for a reasonably prudent officer to protect himself by frisking a possibly violent drug-dealer for weapons even though the officer conducting the frisk in the case at hand testifies that he was not subjectively afraid of the suspect.").

[19] *Terry*, 392 U.S. at 27-28; *Carmouche*, 10 S.W.3d at 330; *Griffin,* 215 S.W.3d at 409-10.

frisked was presently armed and dangerous.[20]

Thus, the court of appeals correctly concluded that Deputy Smith's "failure to articulate a lawful basis for the frisk or detention does not mean that they were illegal."[21] The court of appeals concluded that, viewed objectively, Deputy Smith's testimony supported appellee's frisk and detention.[22] As we noted in *O'Hara v. State*,[23] regardless of whether a police officer states that he was afraid of the suspect, "the validity of the search must be analyzed by determining whether the facts available to [the officer] at the time of the search would

---

[20] *Sheppard*, 2007 Tex. App. LEXIS 3325, at *8 (citing *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000) ("Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken'.")).

[21] *Id.* In *United States v. Wallen*, 388 F.3d 161, 167 (5th Cir. 2004), the Fifth Circuit addressed a similar situation in which the trial court found that the officer had failed to adequately explain his rationale for a *Terry* frisk:

> The district court's finding that [the officer] did not in fact fear for his safety is incorrect, because the validity of the protective search is based on objective evidence. The subjective motivations of police are irrelevant to determining whether a search or seizure is reasonable under the Fourth Amendment. Specifically with regard to the matter of a protective sweep under *Long,* this court has emphasized that there is no legal requirement that an officer subjectively fear for his own safety before engaging in such a search. Even if the district court was correct in finding that [the officer] was not actually fearful for his safety, the circumstances of this case would be enough objectively to put a reasonable officer in fear and thus to justify the instant search under *Long.*

*Id.* (citing *Michigan v. Long,* 463 U.S. 1032 (1983)).

[22] *Sheppard*, 2007 Tex. App. LEXIS 3325, at *9.

[23] 27 S.W.3d 548 (Tex. Crim. App. 2000).

warrant a reasonably cautious person to believe that the action taken was appropriate."[24]

Because the objective facts supported the appropriateness of Deputy Smith's action, the trial court erred in its conclusion of law "that the 'pat down' was without justification and therefore illegal." Although the court of appeals recognized that Deputy Smith's actions were objectively reasonable and appropriate, it mistakenly accepted the trial court's legal finding by speculating that the trial judge must have disbelieved Officer Smith when his explicit fact findings show otherwise.[25]  Had the trial judge disbelieved Deputy Smith, he surely would have said so, or at least he would have phrased his factual findings with an implied caveat of "Deputy Smith *testified* that . . ., but I find that . . ."  The trial judge's findings in this case set out Deputy Smith's perceptions and actions as historical fact, not testimonial contrivance.

The court of appeals also upheld the trial court's conclusion that Deputy Smith "arrested" appellee for Fourth Amendment purposes when he temporarily detained and handcuffed him.  The appellate court stated:

> Giving due deference to the factual determinations made by the trial court, we cannot conclude that the trial court erred when it determined that the deputy arrested Appellee.  The deputy walked to Appellee's front door and placed the man in handcuffs.  A reasonable person could conclude that he was not free to leave at that point.[26]

---

[24] *Id.* at 551; see also *United States v. Tharpe,* 536 F.2d 1098, 1101 (5th Cir. 1976) (noting that there is "no legal requirement that a policeman must feel 'scared' by the threat of danger" because "[s]ome foolhardy policemen will never admit fear."), *overruled in part on other grounds, United States v. Causey,* 834 F.2d 1179 (5th Cir.1987).

[25] *Sheppard*, 2007 Tex. App. LEXIS 3325, at *10-11.

[26] *Id*. at *13.

Indeed, appellee was not free to leave at that point; he was being temporarily detained while Officer Smith conducted his investigation. That is precisely what *Terry* permits–a temporary detention, in which the person is not free to leave, while the police officer investigates whether a crime has been committed.[27] But a Fourth Amendment *Terry* detention is not a custodial arrest, and the use of handcuffs does not automatically convert a temporary detention into a Fourth Amendment arrest.[28] As Professor LaFave explains, handcuffing a person who has been temporarily detained "is not ordinarily proper, but yet may be resorted to in special circumstances, such as when to thwart the suspect's attempt to 'frustrate further inquiry.'"[29]

---

[27] *Terry*, 392 U.S. at 30-31.

[28] *See Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (police officers who temporarily handcuffed and detained suspect in their patrol car had not "arrested" him for purposes of the Fourth Amendment; "There is no bright-line test providing that mere handcuffing is always the equivalent of an arrest. Instead, when evaluating whether an investigative detention is unreasonable, 'common sense and ordinary human experience must govern over rigid criteria.'") (internal citation omitted); *Rhodes v. State*, 945 S.W.2d 115, 117-18 (Tex. Crim. App. 1997) (officer handcuffed defendant "primarily out of concern for his safety, based on the circumstances: it was dark; the area was a high-crime location; the officers had just concluded a car chase which was initiated due to commission of a traffic violation and during which a bag was dropped from the car; and, his partner was chasing the driver, leaving [officer] alone with the suspect"; handcuffing was reasonable under the circumstances and did not constitute an arrest); *Mays v. State*, 726 S.W.2d 937, 943-44 (Tex. Crim. App. 1986) (officer's conduct in handcuffing two men was not an arrest and was reasonable under the circumstances as a temporary investigative detention; the lone police officer arrived at the scene of a possible burglary and saw two men in front of the door; officer told the men that he would have to frisk them, he did so, and then handcuffed them for his own protection, "due to the nature of the call and the way they were acting scared like maybe they had been caught at something, and I was alone, and two of them, and they was both bigger than I was.").

[29] 4 WAYNE R. LeFAVE, SEARCH AND SEIZURE, § 9.2(d), at 311-13 (4th ed. 2004) (collecting federal and state cases upholding handcuffing during a temporary detention as proper under the particular circumstances). *Compare Zayas v. State*, 972 S.W.2d 779, 789-90 (Tex.

In the present case, the trial court made factual findings that appellee "was placed in handcuffs and informed that he was not under arrest but only being detained until the scene could be secured," and then "Deputy Smith checked the residence for 'officer safety' and for welfare concerns due to complainant saying there were three people present." These factual findings are supported by the record. Deputy Smith testified that he made that brief walk-through[30] of appellee's trailer because Mr. Schneider had told him that a third person, Elizabeth Miley, had been with the two men when appellee threatened Mr. Schneider with a knife. He wanted "[t]o make sure they weren't laying in [there] dead, stabbed to death. There had already been a complaint of someone pulling a knife."[31]

---

App.–Corpus Christi 1998, pet. ref'd) (officer acted reasonably in handcuffing defendant at beginning of investigatory detention because he was sole officer, defendant did not comply with his directions, and officer did not know whether other suspects were there; "The reasonableness of a particular officer's actions is to be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight, and allowances must be made for the fact that officers must make quick decisions under tense, uncertain, and rapidly changing circumstances."), *and Salazar v. State*, 805 S.W.2d 538, 540 (Tex. App.–Fort Worth 1991, pet. ref'd) (handcuffing the detainee was, under the circumstances, "a reasonable corollary to the investigative detention" and did not amount to an arrest), *with State v. Moore*, 25 S.W.3d 383, 387 (Tex. App.–Austin 2000, no pet.) (officer acted unreasonably in handcuffing defendant detained for investigation of forgery because detention occurred in well-lit store, suspect was cooperative, and forgery is not a crime normally associated with violence).

[30] *Maryland v. Buie*, 494 U.S. 325, 327-28 (1990) (stating that a "protective sweep" is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others"; sweep of defendant's basement upheld "in case there was someone else down there").

[31] *See Laney v. State*, 117 S.W.3d 854, 861 (Tex. Crim. App. 2003) (emergency-doctrine exception set out in *Mincey v. Arizona*, 437 U.S. 385 (1978) applies and permits a warrantless entry into a home for a brief "sweep" of that residence if an officer has a reasonable belief of an immediate need to protect or preserve life or avoid serious injury).

This was a reasonable course of conduct under the Fourth Amendment. An objectively reasonable and prudent police officer could both (1) temporarily handcuff Mr. Sheppard, who had allegedly just threatened another person with a large knife while using methamphetamine and who still had that knife on his person; and (2) make a brief sweep of the rest of Mr. Sheppard's trailer to see if Ms. Miley was still present–either as a victim or as someone who posed a danger to Officer Smith during his investigation. As soon as Deputy Smith completed the brief sweep, he uncuffed appellee, and they both went outside.

An "arrest" under the Fourth Amendment is a greater restraint upon a person's freedom to leave or move than is a temporary detention, which also restrains a person's freedom.[32] As Professor Dix has noted, Article 15.22,[33] which provides that "[a] person is arrested when he has been actually placed under restraint or taken into custody," is "of no help" in determining whether that person has been subjected to a Fourth Amendment arrest

---

[32] *See generally*, 40 GEORGE E. DIX AND ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 7.34 (2d ed. 2001).

[33] TEX. CODE CRIM. PROC. art. 15.22. In this Court, appellee now argues that the trial court "properly applied the definitions" in article 15.22, and therefore, under a state statute, the trial court correctly found that he was "arrested" when he was temporarily detained at his front door. Appellee never mentioned article 15.22 in his motion to suppress, and the trial court never mentioned article 15.22 in either his factual findings or his conclusions of law. Instead, appellee's motion to suppress claimed that

> [t]he actions of the law enforcement agents violated the constitutional and statutory rights of the Defendant under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Section 9, of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure.

or an investigatory detention.[34]  That statute, drafted long before *Terry v. Ohio*,[35] has been

called "legislatively obsolete" because it does not distinguish between custodial arrests and

temporary detentions.[36]    Although there is no "bright-line" rule to distinguish the two,

Professor Dix notes that Texas cases are generally categorized as an "arrest" or "detention"

depending upon several factors, including the amount of force displayed,[37] the duration of

a detention, the efficiency of the investigative process and whether it is conducted at the

original location or the person is transported to another location, the officer's expressed

intent–that is, whether he told the detained person that he was under arrest or was being

detained only for a temporary investigation, and any other relevant factors.[38]  "If the degree

of incapacitation appears more than necessary to simply safeguard the officers and assure the

suspect's presence during a period of investigation, this suggests the detention is an arrest."[39]

---

[34] DIX & DAWSON, § 7.34, at 460.

[35] 392 U.S. 1 (1968).

[36] *Francis v. State*, 922 S.W.2d 176, 179 n.4 (Tex. Crim. App. 1996) (Baird, J., concurring and dissenting).  Article 15.22 was first enacted in 1856 and has remained virtually unchanged for 150 years.  It is not a statute that was drafted in contemplation of federal or Texas search and seizure law in a post-*Terry* environment.

[37] "[O]fficers may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety." *Rhodes*, 945 S.W.2d at 117; *see United States v. Sokolow*, 490 U.S. 1, 10 (1989) (police are not required to use "least intrusive means" to verify or dispel their suspicions; officers were not unreasonable in forcibly detaining defendant).

[38] DIX & DAWSON, § 7.34, at 464-67.

[39] *Id.* at 462; *see United States v. Smith*, 3 F.3d 1088, 1095-96 (7th Cir. 1993) ("Courts will look to several factors in determining the distinction between a stop and an arrest, among them are the officers' intent, impressions conveyed, length of stop, questions asked and any

Although that may not be a fully adequate statement of the distinction between a Fourth Amendment arrest and a temporary detention, it is clear that Officer Smith did not handcuff appellee for longer than was necessary to make a brief "sweep" of the trailer; he told appellee that he was handcuffing him solely for that purpose; he uncuffed him as soon as he was done; and he told appellee that he was not under arrest. Given the totality of these circumstances, "a reasonable person would believe the seizure was to be sufficiently nonintrusive as to be only an 'investigative detention.'"[40] This is a legal conclusion, and we review *de novo* the application of legal principles to historical facts.

The trial judge was simply mistaken about the legal significance of the facts that he found. As a matter of law, these facts support a finding that Officer Smith's conduct and appellee's temporary detention were reasonable under the Fourth Amendment.

The court of appeals noted that the trial court made a factual finding that "Deputy Smith did not have specific articulable facts to support a reasonable suspicion to believe the defendant was engaged in criminal activity to justify the search of defendant or placing him in handcuffs."[41] But this is not a "factual" finding–factual findings are who did what, when, where, how, or why. They also include credibility determinations. They do not include legal rulings on "reasonable suspicion" or "probable cause"; those are legal conclusions subject

---

search made. This list is not exhaustive nor are any of the factors decisive.").

[40] D IX & DAWSON, § 7.34, at 466.

[41] *Sheppard*, 2007 Tex. App. LEXIS 3325, at *7-16; see note 7, *supra*, Findings of Fact (8).

to *de novo* review, not deference.[42]     It was only by speculating about credibility determinations that are not part of the trial judge's written factual findings that the court of appeals upheld the trial judge's suppression ruling.

The problem in this case has been mixing the apples of explicit factual findings with the oranges of conclusions of law. The trial judge's historical factual findings are supported by the record. His conclusions of law do not flow from those factual findings. However, this case should serve as an example of why explicit, written factual findings are so important to defendants, prosecutors, and reviewing courts. Explicit factual findings relieve the parties and the appellate courts from the need to speculate about the possible historical facts that the trial judge might have found or credibility judgments that the trial judge did or did not make. They also permit the reviewing court to focus solely on the validity of the trial judge's application of the law to the specific facts that he actually found.[43]

In sum, because there is no indication that the trial judge disbelieved Deputy Smith's testimony,[44] the trial court erred, as a matter of law, in granting the motion to suppress. The objective facts support the legal conclusion that Deputy Smith's actions in (1) temporarily

---

[42] See note 14, *supra.*

[43] *See State v. Ross*, 32 S.W.3d 853, 859-60 (Tex. Crim. App. 2000) (Womack, J., concurring) ("No matter how many times we have said it, there is no justification for us to 'assume that the trial court made implicit findings of fact that support its ruling. . . . It is just as possible that the resolution of the issue turned on the trial court's understanding of the law. Indeed, it is more likely that the trial court's ruling is one of law when the evidence was uncontradicted.").

[44] If, on remand, the trial judge wishes to reconsider his original ruling or findings of fact to make explicit credibility findings on specific testimony, he has the authority to do so.

detaining appellee; (2) patting him down for the knife that Mr. Schneider said he had been threatened with; (3) temporarily handcuffing appellee while making a quick inspection of the house to look for Ms. Miles; (4) noticing the drug paraphernalia in plain view on a table, and (5) requesting and obtaining appellee's consent to a full search by drug task-force officers were reasonable under the Fourth Amendment and Texas law.

We therefore reverse the judgment of the court of appeals and remand this case to the trial court for further proceedings.

Delivered: December 10, 2008

Publish