279.15

In the Court of Criminal Appeals
of Texas

ORIGINAL

Original Petition for
Discretionary Review

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 02 2015

Abel Acosta, Clerk

Daren Marcus Bell, Appellant
VS
The State of Texas, Appelle

Eighth Court of Appeal Number, 08-13-00139-CR

Appeals From The No. 2 District Court
Tarrant County, Texas
(TC# 1304432R)

FILED IN
COURT OF CRIMINAL APPEALS

APR 02 2015

Abel Acosta, Clerk

# Subject Index

Subject Index     i

Index Of Authorities     ii

Statement of The Case     1

Statement Of Procedural History Of The Case     2

Point Of Error Number One     3

Point Of Error Number Two     3

Argument And Authorities     3

Point Of Error Number One     4-5

Point Of Error Number Two     6-8

Prayer For Relief     9

# INDEX OF Authorities

## CASES

PAGE

CRANFORD US. Washington,
541 U.S. 36, 124 S. Ct. 1354, 158 L.Ed. 2d 177 (2004)    3

DAVIS US. Washington,
547 U.S. 813, 126 S. Ct. 2266, 165 L.Ed. 2d 224 (2006)    4

Miranda US. Arizona,
384 U.S. 436 (1966)    6

## Statutes, Codes, And Rules

TEX. Const. Art. 1 § 9    6
TEX R. App. P. 44.2 (a)    7, 8
TEX R. Evid. 801 (2)    4
U.S. Const. Amend V    6, 7
U.S. Const Amend VI    4

ii

# STATEMENT OF THE CASE

Appellant was indicted By The Tarrant County Grand Jury for the offense of Aggravated Assault With A Weapon. The Indictment Also Contained Two Enhancement Paragraphs.

The Indictment States In Pertinent Part: "Then And There Intentionally, Knowingly OR Recklessly Cause Serious Bodily Injury TO VERNISAL LEE, A member of The Defendant's Family, Household, Or A Person That The Defendant Was Involved With In A Dating Relationship, By Cutting Her With A Box Cutter, A Razor, Or A Knife And The Defendant Did Use Or Exhibit A Deadly Weapon During The Commission Of This Assault, To Wit: A Box Cutter, A Razor, Or A Knife, That In The Manner Of Its Use Or Intended Use Was Capable Of Causing Death Or Serious Bodily Injury.

1

## Statement Of Procedural History Of The Case.

In A Two-Count Indictment, Appellant Was Charged With Aggravated Assault Of Family Or Household Member With A Deadly Weapon. CR-9. Appellant Was Further Charged With Three Habitual Offender Notices In An Amended Indictment Following A Number Of Dismissals And Re-Indictments. CR-146.

Appellant Entered A Plea Of "Not Guilty" To The Charged Offenses. R. 11-12 183. After A Trial On The Merits Of The Case, The Jurors Found Appellant "Guilty" Of The Charged Offense And "True" To The Use Of A Deadly Weapon. CR-287, 302; R III 92. Appellant Entered Pleas of "True" To The Habitual Offender Notices Found Within The Indictment R. III-93, 96, 112.

At The End Of The Punishment Phase Of The Trial, The Jurors Assessed Appellant To Fifty (50) Years In The Institutional Division Of The Texas Department Of Criminal Justice. CR-298, 302; R-III-13. Appellant Filed A Timely Notice Of Appeal On April 3, 2013 CR-309.

The Court of Appeals Affirm the judgment of The Court on JANUARY 30, 2015. No Motion FOR REHEARING Was SUBMITTED FOR REVIEW AS A RESULT OF COUNSEL DECISION NOT TO REPRESENT APPELLANT PAST THAT JUNCTURE AND APPELLANT WOULD PROCEED PRO-SE

## Points Of Error Number One

The Trial Court Abused It's Discretion By Failing To Grant Appellant's Motion To Suppress The Victim's Oral Statement Based On A Violation Of The Sixth Amendment To The United States Constitution As Found In Crawford Vs. Washington.
(R. II-197)

## Point Of Error Number Two

The Trial Court Abused It's Discretion By Failing To Grant Appellant's Motion To Suppress Appellant's Oral Statements Based On Law Enforcements Failure To Give The Required Warnings Found In Miranda Vs. Arizona In Violation Of The Fifth Amendment Of The United States Constitution.
(R. III-31)

3

## Argument And Authorities
## Point OF Error Number One

The trial Court abused it's discretion by admitting Ms. Lee's statement as excited utterance hearsay exception although her statements were in response to police questioning that specifically violated Appellant's Sixth Amendment right to Confrontation under the United States Constitution. U.S. Const. amend VI; Crawford Vs. Washington, 541 U.S. 36, 124 S.Ct 1354, 158 L.Ed 2d. 177 (2004) (holding that for testimonial hearsay to be admissible, declarant must be unavailable and defendant must have had a prior opportunity to cross-examine).

A review of the record shows that Ms. Lee's statements were in response to police interrogation, not excited utterances. Her statements therefore were testimonial and regardless of whether Ms. Lee would be available at trial; Appellant did not have prior opportunity to Cross-examine her. Accordingly, the statements were inadmissible under the Confrontation Clause of the Sixth Amendment. See U.S. Const. Amed. VI. Also see Tex. Rule. Evid. 801 (a)

In Davis Vs. Washington, the Supreme Court attempted to clarify the distinction between testimonial and non-testimonial statements. Davis Vs. Washington, 547 U.S. 813, 840, 126 S.Ct. 2266, 2288, 165 L.Ed. 2d 224 (2006).

4

In Davis, a 911 emergency operator was asking questions about an ongoing domestic disturbance at a home where the Perpetrator was still in the home with the victim. Id. @ 817, 126 @ 2271. The Supreme Court went through an analysis to determine that the 911 operator's questions were meant to enable Police to assist in an ongoing emergency. Davis vs Washington, 547 U.S. @ 827-828, 126 S.Ct. @ 2277. The Davis Court therefore held that the out-of-court 911 statements were not testimonial in nature. Id.

In the instant case, a review of the record shows Ms. Lee's statements were in response to Police questions. R. 11-189-197. Although Ms. Lee was experiencing a medical emergency, the Criminal offense had passed. In fact, emergency personel were waiting for the officer to finish asking questions so they could attend to Ms. Lee. The Police officer knew that the prime suspect had been handcuffed and placed in the back of a Patrol Car. No ongoing emergency existed for police intervention or questioning.

The questions therefore were intended to gain information from a witness pursuant to an investigation of a criminal offense. See Davis Vs. Washington, 547 U.S. @ 819, 126 S.Ct. @ 2272. Even in a critical medical situation, Ms. Lee's statements were not made on impulse under the stress and excitement of the event or condition. The Police were asking questions under the circumstances that were "Conducive to contemplation of future legal Proceedings." that rendered them testimonial rather than excited utterance hearsay exceptions. See Id.

5

## Point Of Error Number Two

The Trial Court Abused Its Discretion By Failing To Grant Appellant's Motion To Suppress Appellant's Oral Statements Based On Law Enforcements Failure To Give The Required Warnings Found In Miranda Vs. Arizona In Violation Of The Fifth Amendment Of The United States Constitution

(R. III-31)

Appellant Contends that the trial Court abused its discretion by failing to Suppress Appellant's Oral Statements made to the police officers while he was in Custody. Guzman Vs. State, 995 S.W. 2d @ 88-89; Maxwell Vs. State, 73 S. W. 3d @ 281 Specifically, the police officers failed to offer the Safe-gards offered in the fifth Amendment of the United States Constitution and the Texas Constitution. U.S. Const. amend. V; Tex. Const. art. I §9.

The State may not use statements obtained through the custodial interrogation of an individual unless it demonstrates the use of procedural safeguards effective to secure the fifth Amendment Privilege against self-incrimination. See Miranda Vs. Arizona, 384 U.S. 436, 444 (1966).

A Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into Custody or Otherwise deprived of his freedom of action in any significant way. <u>Miranda Vs. Arizona</u>, 384 U.S. @ 444. A Person is in Custody only if, under all of the Objective Circumstances, a reasonable Person would believe his freedom of movement was restrained to the degree associated with an arrest. <u>Dowthitt Vs. State</u>, 931 S.W. 2d 244, 254-255 (Tex. Crim. App. 1996). If an investigation is not yet at a Custodial Stage, a Person's fifth Amendment rights have not yet Come into Play. <u>Melton Vs. State</u>, 790 S.W. 2d 322, 326 (Tex. Crim. App. 1990).

The trial Court's abuse of discretion was Constitutional error for Violation of Appellant's fifth Amendment right against self-incrimination. U.S. Const. amend. V; <u>Dickerson Vs. United States</u>, 530 U.S. 428, 439-440, 120 S.Ct. 2326, 147 L.Ed. 2d 504 (2000); <u>Alford Vs. State</u>, 22 S.W. 3d 669, 673 (Tex. App.-Fort Worth 2000, Pet. ref'd). Because the error was Constitutional, the reviewing Court must reverse unless it Can Conclude beyond a reasonable doubt the error did not Contribute to Appellant's Conviction or Punishment. See Tex. R. App. P. 44.2 (a); <u>Jones Vs. State</u>, 119 S.W. 3d 766, 778-80 (Tex. Crim. App. 2003).

7

Finally, rendering this violation of a Person's Constitutional right to protection against self-incrimination under the fifth Amendment of the U.S. Constitution would give the State and law enforcement the ability to continue to disregard the mandates of the U.S. Constitution as a mere technicality so a defendants' statements "in Custody" maybe used against them without concern for the United States Constitution. For these reasons, the Conviction and Sentence in this Cause should therefore be reversed. See Harris vs. State, 790 S.W. 2d @ 587; Wesbrook vs. State, 29 S.W. 3d @ 119; Alford vs. State, 22 S.W. 3d @ 673. U.S. Const. amend. V; Dickerson vs. United States, 530 U.S. @ 439-44; Miranda vs. Arizona, 384 U.S. @ 444. See also Tex. R. App. P. 44.2 (a)

8

## Prayer For Relief

Wherefore, Premises Considered, Appellant Respectfully Prays That This Honorable Court Hear His Petition For Discretionary Review And After Hearing Reverse And Remand For A New Trial, OR Reverse AND Remand FOR A New Punishment Hearing.

Respectfully Submitted

_____

Daren Marcus Bell
Petitioner          Pro-se
TDCJ-No. 1848812
Stiles Unit
3060 FM 3514
Mark Stiles Unit
Beaumont, TX. 77705

9



|  |  |  |
|---|---|---|
| DAREN MARCUS BELL, | § | No. 08-13-00139-CR |
| Appellant, | § | Appeal from |
| v. | § | Criminal District Court No. 2 |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC # 1304432R) |
|  | § |  |

## O P I N I O N

Daren Marcus Bell appeals his conviction of aggravated assault with a deadly weapon of a family or household member or a person he was involved with in a dating relationship (Count I), enhanced by a prior felony conviction. *See* TEX.PENAL CODE ANN. § 22.02(a)(2)(West 2011).[1] A jury found Appellant guilty, found the enhancement allegation true, and assessed his punishment at imprisonment for a term of fifty years. We affirm.

### FACTUAL SUMMARY

On January 17, 2012, Appellant's then-girlfriend, Vernisal Lee, arrived at Appellant's cousin's apartment to pick him up and take him back to her apartment, where they lived together. Appellant got in Lee's car and told her he had found a stray pit bull and wanted to take it back to

---

[1] The offense is a first degree felony because the jury found Appellant used a deadly weapon during the commission of the assault and he caused serious bodily injury to Lee, a person whose relationship to or association with Appellant is described by Sections 71.0021(b), 71.003, or 71.005 of the Texas Family Code. *See* TEX.PENAL CODE ANN. § 22.02(b)(West 2011); TEX.FAM.CODE ANN. §§ 71.0021(b), 71.003, 71.005 (West 2014).

her apartment. Lee responded that she did not want the dog in her car or her apartment. Appellant became angry and started calling her names, and Lee told him to get out of the car. Appellant then grabbed Lee by the neck and said, "Bitch, I'm going to kill you" or words to that effect. Shortly after that, Lee felt blood coming down her face. When Lee noticed she was bleeding, she started yelling, "[C]all the police, call an ambulance." Appellant took Lee's phone and got out of her car, saying, "[O]h, no . . . I wasn't aiming to do that." Appellant told his cousin to get a towel for Lee and he left the scene. Lee had a large cut on her face at the jawline and another cut on her neck.

The Arlington Police Department received a call regarding a "cutting in progress" and dispatched officers to the scene. Officer Jon Martinez arrived at the scene and attended to Lee. He observed that she was crying and bleeding profusely from a large cut on her neck. Lee told Martinez that she and Appellant had gotten into an argument because he wanted to bring home a stray dog and Appellant took a box cutter out of his pocket and cut her across the face and neck.

Officer Lance Loza was just down the street from the apartment complex when he received the call regarding an "emergency cutting in progress" and he arrived at the scene within seconds. He pulled into the parking lot and several bystanders immediately directed his attention to Appellant who was walking down the street away from the apartment complex. Because Appellant might be armed with a sharp weapon, Loza approached Appellant, drew his Taser, and ordered him to get on the ground. Appellant complied and Loza handcuffed Appellant. Loza noticed that Appellant's left hand was bloody. Loza placed Appellant in the back of a patrol car while the officers conducted their investigation. Loza asked Appellant what had happened and how he got blood on his left hand. Appellant stated that it was his girlfriend's blood. He explained that he and Lee had gotten into an argument about a dog and he had pulled a box cutter

-2-

out of his pocket and "accidentally" cut Lee's throat. Appellant explained that Lee "turned into" the blade when she turned to look for something in the back seat of her car. .

Appellant testified at trial that he had the box cutter in his hand when he got in Lee's car and mistakenly thought he had retracted blade. He said that when Lee turned around from looking in the back seat of the car "somehow she got cut." Lee, however, denied looking in the back seat or being cut after looking in the back seat.

Lee was taken to the hospital by ambulance and underwent emergency surgery. The doctor who attended to her testified that she had a penetrating wound to her neck and was in shock. Lee was in the process of bleeding to death and would likely have done so but for the emergency surgery. The jury found Appellant guilty of aggravated assault with a deadly weapon of Lee.

## ADMISSION OF VICTIM'S STATEMENTS

In Issue One, Appellant contends that the trial court abused its discretion by admitting the victim's oral statements made to Officer Martinez over his objection that the statements violated his confrontation rights guaranteed by the Sixth Amendment. The trial court conducted a hearing outside of the jury's presence to determine the admissibility of Officer's Martinez's testimony regarding the victim's statements to him. The trial court overruled Appellant's objection based on *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004).

The State argues that no confrontation violation occurred because the victim testified at trial and was subject to cross-examination. We agree. The Supreme Court held in *Crawford v. Washington*, that testimonial statements of a witness who is absent from trial cannot be admitted unless the witness was unable to testify and the defendant had a prior opportunity for cross-

examination. *Crawford*, 541 U.S. at 59, 124 S.Ct. at 1369. Consequently, an out-of-court statement does not implicate the Confrontation Clause unless it is testimonial in nature and made by a declarant who is absent from trial. *Crawford*, 541 U.S. at 59, 124 S.Ct. at 1369; *Woodall v. State*, 336 S.W.3d 634, 641-42 (Tex.Crim.App. 2011)(rejecting appellant's argument that witness's memory loss made her absent for purposes of the Confrontation Clause). Lee testified at trial and was subject to cross-examination. Issue One is overruled.

## ADMISSION OF APPELLANT'S STATEMENTS

In his second issue, Appellant argues that the trial court abused its discretion by denying his motion to suppress the oral statements Appellant made to Officer Loza when he was handcuffed and seated in the back of the patrol car. Appellant contends that the statements are inadmissible because he was in custody and was not given his *Miranda*[2] warnings prior to questioning. The State responds that Appellant was not in custody, and therefore, *Miranda* does not apply.

### *Standard of Review*

In reviewing a trial court's ruling on a *Miranda*-violation claim, an appellate court conducts a bifurcated review: it affords almost total deference to the trial judge's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor, and it reviews *de novo* the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor. *Alford v. State*, 358 S.W.3d 647, 652 (Tex.Crim.App. 2012), *cert. denied* 133 S.Ct. 122, 184 L.Ed.2d 26 (2012). A trial court's ultimate "custody" determination presents a mixed question of law and fact. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex.Crim.App. 2007). If credibility and demeanor are not necessary to the resolution of an issue, whether a set of historical facts constitutes custodial interrogation

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

-4-

under the Fifth Amendment is subject to *de novo* review because that is an issue of law: it requires application of legal principles to a specific set of facts. *Alford*, 358 S.W.3d at 653.

*Custody*

A person is "in custody" for *Miranda* purposes if, under the totality of the circumstances, a reasonable person would believe his freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322-24, 114 S.Ct. 1526, 1528-30, 128 L.Ed.2d 293 (1994); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App. 1996). An appellate court determines custody based on objective circumstances, and any subjective intent of law enforcement officers to arrest is irrelevant unless that intent is communicated or otherwise manifested to the suspect. *Stansbury*, 511 U.S. at 325-26, 114 S.Ct. at 1530. In evaluating whether a reasonable person would believe his freedom has been restrained to the degree of a formal arrest, we are to look only to the objective facts surrounding the detention. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex.Crim.App. 2012). We do not consider the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury*, 511 U.S. at 323, 114 S.Ct. at 1529. The subjective intent of law enforcement officials to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect. *Dowthitt*, 931 S.W.2d at 254, *citing Stansbury*, 511 U.S. at 324–25, 114 S.Ct. at 1530. Any undisclosed subjective belief of the suspect that he is guilty of an offense should not be taken into consideration--the reasonable person standard presupposes an innocent person. *Ortiz*, 382 S.W.3d at 373; *see Dowthitt*, 931 S.W.2d at 254, *citing Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991).

The issue before us is whether the objective facts establish that Appellant was temporarily detained for purposes of an investigative detention or whether his freedom was

restrained to the degree associated with a formal arrest. A police officer has the right to briefly detain and investigate a person when the officer has reasonable suspicion that the person is involved in criminal activity. *State v. Sheppard*, 271 S.W.3d 281, 287 (Tex.Crim.App. 2008). The officer may also conduct a "pat-down" search of a person if the officer has a reasonable belief that the person is armed. *Id.* Further, placing a person in handcuffs does not automatically convert a temporary detention into an arrest. *Sheppard*, 271 S.W.3d at 289; *Balentine v. State*, 71 S.W.3d 763, 771 (Tex.Crim.App. 2002)(stating that there is no bright-line test providing that mere handcuffing is always the equivalent of an arrest; common sense and ordinary human experience must govern over rigid criteria).

Officer Loza testified outside of the jury's presence that he was dispatched on an "emergency cutting in progress" call. He was only a short distance away when he received the dispatch so he was the first officer on the scene. Officer Loza saw several people in the parking lot of the apartment complex and they were all pointing at Appellant who was walking away. Loza knew that the call involved a weapon and he did not know whether Appellant was armed, so he approached Appellant with his Taser drawn. Appellant complied with the officer's instructions to get on the ground so Loza did not have to use his Taser. Loza handcuffed Appellant and noticed he had blood on his hand. He also frisked Appellant for weapons and had him sit in the rear of the patrol car while the officers conducted their initial investigation. Loza explained that he took these actions for officer safety due to the nature of the call and the assailant's possible use of a weapon which had not been located. Loza did not place Appellant under arrest and did not inform him he was under arrest. After securing Appellant, Loza asked him how he got blood on his hand. Appellant told Loza that it was his girlfriend's blood. Appellant said that he and his girlfriend had argued because he found a stray dog he wanted to

-6-

keep and he pulled a box cutter out of his coat pocket and accidentally cut her in the throat. Appellant told Loza he did not have the box cutter because he had thrown it somewhere in the parking lot. Several officers looked for the box cutter but they did not find it. After speaking with Appellant, Loza talked to Officer Martinez regarding the victim's condition and statements about what had happened. At this point, Loza placed Appellant under arrest for aggravated assault with a deadly weapon.

When Officer Loza first arrived on the scene and several bystanders immediately directed the officer's attention to Appellant, the officer had a reasonable suspicion that Appellant was involved in criminal activity. Given that the call involved an assaultive offense with a weapon and the weapon had not been located, Loza reasonably feared that Appellant might be armed and presented a danger to the safety of the officers on the scene. Thus, Loza acted appropriately under the circumstances by detaining Appellant and placing him in handcuffs. The officer's suspicion that Appellant might be involved in criminal activity certainly became stronger when he saw blood on Appellant's hand, but it still did not rise to the level of probable cause to arrest. Loza placed Appellant in the back of a patrol car while he proceeded with the investigation necessary to confirm or dispel his suspicions. *See Sheppard*, 271 S.W.3d at 289. Loza did not have probable cause to arrest Appellant until after he questioned him and spoke with Officer Martinez. Based on the totality of the circumstances, we conclude that Appellant was temporarily detained pursuant to an investigative detention but was not in custody at the time Officer Loza questioned him. *See Balentine*, 71 S.W.3d at 771 (defendant not in custody even though he was handcuffed and placed in back of patrol car because those actions were reasonably necessary to ensure the officer's safety); *Wert v. State*, 383 S.W.3d 747, 754 (Tex.App.--Houston [14th Dist.] 2012, no pet.)(defendant was not in custody for *Miranda*

-7-

purposes even though he was handcuffed and placed in back of officer's patrol car where the officers believed the defendant to be violent and found it necessary to restrain his movement in order to protect the safety of the officers at the scene). The trial court did not abuse its discretion by denying Appellant's motion to suppress his oral statements made to the officer. We overrule Issue Two and affirm the judgment of the trial court.

January 30, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, J., and Barajas, C.J., (Senior Judge)
(Barajas, C.J., Senior Judge, sitting by assignment, not participating)

(Do Not Publish)

-8-