# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00786-CR

The State of Texas, Appellant

v.

Christopher Reid Dewbre, Appellee

### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. C-1-CR-14-207714, HONORABLE BRANDY MUELLER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State of Texas appeals the trial court's order granting Christopher Reid Dewbre's motion to suppress his statements to law-enforcement officers in the underlying prosecution for driving while intoxicated. *See* Tex. Code Crim. Proc. art. 44.01(a)(5). The State contends that the trial court abused its discretion by granting the motion. We will reverse the order suppressing Dewbre's statements and remand this cause for further proceedings consistent with this opinion.

## BACKGROUND

Austin Police Department Officer Collin Michael Fallon, the only witness at the hearing on Dewbre's motion to suppress, testified that he was dispatched to the 2000 block service road of south IH-35 on an urgent "check welfare" report of a driver passed out in a vehicle with its engine running. Officer Fallon stated that he was familiar with the area, located a few blocks south of the downtown entertainment district, where he had worked numerous collisions and was once

struck by an intoxicated driver. Using the description provided in the report, Officer Fallon said that he located the vehicle in the parking lot of a service station. The trial court admitted dashboard-camera video with date-and-time stamps showing events from Officer Fallon's arrival at the scene at 2:07 a.m. to Dewbre's arrest and his subsequent transport to the police station.

Officer Fallon testified that when he arrived, Austin Fire Department and Emergency Medical Services personnel were already on the scene and had placed "chock blocks" beneath the tires of the vehicle to immobilize it. He recalled that the vehicle had its lights on, its engine running, and was not parked at a gas pump or in any of the available parking spaces. Officer Fallon testified that he parked his patrol car in front of the vehicle. The video shows Officer Fallon then approached the vehicle on the passenger side, shined his flashlight inside, confirmed that the vehicle was in "park," and then opened the passenger-side door. Officer Fallon testified that he saw keys in the ignition and a driver, passed out in a reclined position, whom he had trouble waking. The video shows Officer Fallon announcing, "Austin Police" three times, and saying, "Wake up, man." Officer Fallon testified that he took the keys out of the ignition, and the video shows the lights being deactivated.

The video then shows Officer Fallon walking to the driver's side of the vehicle, and saying to the occupant, "Sit up, man," and asking if he needs EMS. When the occupant declines, Officer Fallon says, "Hop out." The occupant says, "I'm good," as he reaches over toward the driver's-side door. Officer Fallon testified that the man (later identified as Dewbre) was attempting to shut the door. Officer Fallon told him, "No, you don't, no, nope, don't. You need to hop out. So we can check you out. You passed out with the car running."

Officer Fallon testified that once Dewbre got out of the car, he smelled alcohol coming from Dewbre's breath, and Dewbre was "showing many signs of intoxication." Officer Fallon testified that Dewbre seemed like he was going to fall over. Video shows Officer Fallon asking Dewbre whether he had any weapons on him, having him walk a few steps from the side of the vehicle (which took two seconds) for a pat down, and asking if he can take out his identification. Officer Fallon testified that he tried to get Dewbre "to a safe spot where I can continue to interview him and ask him questions."

The video shows Officer Fallon asking Dewbre to "walk over this way" and to "leave the [truck] open for now," but Dewbre proceeds to shut the driver's-side door before walking for two or three seconds toward the front of his vehicle. Officer Fallon tosses keys on the hood of the patrol car and then asks Dewbre where he is coming from and how much he has had to drink. Dewbre says twice that he "had a couple of drinks." Then, Dewbre spontaneously expresses confusion about his situation and states, "I'm not too sure of what's going on." Officer Fallon responds, "I'm going to explain it to you," and proceeds to recount that he was called to the scene, that he made certain observations about Dewbre when he arrived, that he wanted to ensure Dewbre was all right, that operating a motor vehicle while intoxicated is illegal in Texas, and that "now we're at that point I need to ask you some more questions; I need to make sure you're safe to operate that motor vehicle." Officer Fallon's statement that operating a motor vehicle while intoxicated is illegal in Texas occurs on the video at time stamp 2:11:57 a.m., less than five minutes after he arrived at the scene, and less than three minutes after Dewbre exited his vehicle.

3

Next, the video shows Officer Fallon telling Dewbre that another officer (backup had recently arrived at the scene) would stand by with him, if Dewbre did not mind, while Officer Fallon moved his patrol car, and he tells Dewbre, "Go over there with him." Dewbre walks there (which takes approximately five seconds) near his vehicle. Officer Fallon takes less than a minute to turn his patrol car to face a well-lit area in front of a food truck—previously, the patrol car was parked like Dewbre's, parallel with the food truck—and then takes just over another minute adjusting his dashboard camera to better record the area in front of his vehicle. Officer Fallon testified, as the video confirms, that when he repositioned his patrol car, he stayed in the same parking lot and did not move Dewbre from his location.

The video also shows that shortly after Officer Fallon joins Dewbre, the backup officer steps away to a patrol car, and Officer Fallon and Dewbre walk fifteen seconds to get in proper position before the patrol-car camera. Officer Fallon then reviews with Dewbre why he was called to the scene: "You understand you drove to this point, the vehicle was still running, you're still behind the wheel. That's why I gotta make sure you're safe to drive." Officer Fallon tells Dewbre that he is going to "roll through some questions and then we're going to run through some tests." Officer Fallon states that because of all that has taken place, he needs to make sure that Dewbre is safe to drive, and "if you are, you are." Officer Fallon testified that he had previously responded to calls similar to this one and after determining that the individuals were fine, sent them on their way.

The video shows that Officer Fallon proceeded with typical DWI questions about what Dewbre had to drink, how much he had to drink, and whether he had driven. Officer Fallon

4

reiterates that if Dewbre is safe to drive, he can go home. Dewbre made several admissions, including that he was driving earlier, that he had at least seven to eight drinks at Fringe Bar, that he was disoriented, and that he was unsure whether he was able to drive a motor vehicle. Officer Fallon administered three field-sobriety tests: horizontal gaze nystagmus, walking heel-to-toe, and one-leg stand. After the tests, Dewbre refused to provide a sample of his breath.[1] Video time stamped at 2:37:39 a.m. shows Officer Fallon putting Dewbre in handcuffs and stating that he was being placed under arrest for driving while intoxicated.

When Dewbre was subsequently charged with DWI, he filed a motion to suppress evidence of his statements to police, contending that his statements were made as a result of custodial interrogation, that he was not properly warned of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and that he had "asserted his right to remain silent or to have a lawyer present." The trial court granted Dewbre's motion to suppress, and the State filed this appeal.[2]

The trial court made these findings and conclusions:

**FACTUAL FINDINGS:**

1. The Defendant, Christopher Dewbre, was arrested for Driving While Intoxicated in Travis County, on May 11, 2014 in Travis County, Texas.

2. The case first unfolds when Officer Fallon of the Austin Police Department responds to a 911 call, wherein it is reported that the Defendant is passed out

---

[1] Dewbre changed his mind later and provided a sample before going to jail.

[2] While the appeal was pending, we determined that the trial court had not entered its findings of fact and conclusions of law that had been requested, and we remanded the cause for entry of the findings and conclusions. *State v. Dewbre*, No. 03-15-00786-CR, 2016 Tex. App. LEXIS 951 (Tex. App.—Austin Jan. 29, 2016, no pet.) (mem. op., not designated for publication) (per curiam).

5

behind the wheel of a parked car at a gas station parking lot, with the car engine on.

3. Officer Fallon arrives on scene and observes the Defendant in the parked vehicle, as the call had reported, passed out behind the wheel, with the engine running.

4. It is night-time and further, the Court takes notice of the fact that the location of the Defendant is near to the entertainment district of the City of Austin.

5. The Fire Department and EMS had arrived on scene prior to law enforcement and had taken safety measures with the Defendant, by putting "chock blocks" beneath the tires of the vehicle the Defendant was in, in an effort to prevent it from moving.

6. Officer Fallon further, parked his patrol vehicle in front of Defendant's vehicle, positioning the vehicles bumper to bumper, while the Defendant remained passed out behind the wheel, so as to further prevent the Defendant's car from leaving the parking place. Officer Fallon stated, "with my vehicle there, he definitely could not have moved forward."

7. Officer Fallon enters the vehicle, turns the ignition off and takes the keys to Defendant's vehicle from the car. The keys are removed from the Defendant's care, custody, and control.

8. After Officer Fallon is able to get the Defendant out of the vehicle and to *come to*, so to speak, he observes the following while interviewing him: the Defendant's eyes are "extremely bloodshot, watery and glassy," there was an "extremely strong odor of alcoholic beverage coming from his breath when he spoke," his speech was "slurred" and "mush-mouthed," he was "staggering" and "wobbling as though he was going to fall over," . . . in sum, showing many signs of a high degree of intoxication.

9. Officer Fallon led the Defendant away from his car, to another part of the parking lot.

10. Officer Fallon conducted field sobriety tests. All in which, the Defendant exhibited numerous clues of intoxication.

11. The Defendant admitted to consuming 7 to 8 drinks . . . shots of whiskey, Jim Beam.

12. The Defendant blew a .207 on Officer Fallon's portable breath test at the scene.

13. An unusually abundant amount of evidence of intoxication had been gathered/observed by Officer Fallon.

14. Officer Fallon agreed with defense counsel, that after that, he believed that the Defendant was a danger to himself or others and further, that there was no way that the Defendant was free to leave.

15. The Defendant had been led a distance from his car and the keys of his car had been removed and further, his car was blocked in by chocks and Officer Fallon's vehicle.

16. *Miranda* warnings were not given.

17. Officer Fallon continues to question the Defendant regarding drinking and driving.

18. The Defendant's responses were direct responses to questions/interrogation by Officer Fallon.

**CONCLUSIONS OF LAW:**

At the point in time after the Defendant blew into Officer Fallon's breath testing instrument, the Defendant was more than simply detained, he was in custody. Responses to Officer Fallon's interrogation after time stamp 2:11:57 (video evidence, exhibit #1) were made after an ample amount of probable cause existed against the Defendant for public intoxication and/or driving while intoxication.

Although the Defendant was not in handcuffs, nor in a patrol vehicle, as is often required to show custody under the law, the restriction upon the Defendant's freedom of movement was to the degree associated with an arrest, and not simply an investigative detention.

To further evidence that the Defendant could not have felt as though he was free to leave, the Defendant had been (albeit a short distance) led away from the scene, by Officer Fallon.

The manifestation of probable cause for public intoxication and or driving while intoxicated would lead a reasonable person in the Defendant's shoes to believe he was restrained to a degree associated with an arrest.

The Defendant believed that he was deprived of his freedom of movement.

*Miranda* warnings were required at the point when it was clear that the Defendant was subject to custodial interrogation and the warnings were not provided.

*Miranda* and Article 38.22 prevent the Defendant's responses to Officer Fallon after time stamp 2:11:57 from being admissible.

## DISCUSSION

The State's first and third issues on appeal contend that Dewbre failed to show his statements were the product of a custodial interrogation that violated his rights under the United States Constitution or the Texas Code of Criminal Procedure.[3] Specifically, the State contends that the evidence in this record does not support the trial court's ultimate conclusions that Dewbre was in custody as of 2:11:57 a.m. and that his statements after that time were inadmissible under *Miranda v. Arizona*, 384 U.S. 436 (1966) and article 38.22 of the Texas Code of Criminal Procedure.

**Standard of review**

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion and overturn the ruling only if it is arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We give almost complete deference to the trial court's determination of historical facts, but we review the court's application of the law to

---

[3] The State's second issue contends that there was no violation of Dewbre's rights under the Texas Constitution; however, the trial court's ruling was based only on *Miranda* and article 38.22. *See Miranda v. Arizona*, 384 U.S. 436 (1966); Tex. Code Crim. Proc. art. 38.22, §§ 2(a), 3(a)(2). Based on our disposition of the State's first and third issues, we need not address the State's second issue. *See* Tex. R. App. P. 47.1.

those facts de novo. *Story*, 445 S.W.3d at 732; *Dixon*, 206 S.W.3d at 590. In deciding whether an individual was in custody, we take the findings that are supported by the record and determine whether they constitute a *Miranda* custody situation as a matter of law. *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013). We are not bound by the trial court's findings and conclusions that are not supported by the record. *State v. Whittington*, 401 S.W.3d 263, 271 (Tex. App.—San Antonio 2013, no pet.); *see Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2014) ("[W]hen evidence is conclusive, such as . . . 'indisputable visual evidence,' then any trial-court findings inconsistent with that conclusive evidence may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling." (quoting *Tucker v. State*, 369 S.W.3d 179, 187 (Tex. Crim. App. 2012) (Alcala, J., concurring))); *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (declining to give deference to trial court's implicit findings that were contradicted by videotape evidence and noting that such evidence did not involve credibility assessments to which reviewing courts must defer).

**Custodial interrogations and investigative detentions**

The State's appellate issues require us to determine whether Dewbre demonstrated that his questioning by law enforcement at the scene was a "custodial interrogation." The defendant bears the burden of proving that a statement was the product of a custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007); *Zavala v. State*, No. 04-16-00422-CR, 2017 Tex. App. LEXIS 1053, at *4-5 (Tex. App.—San Antonio Feb. 8, 2017, no pet.) (mem. op., not designated for publication). Custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom

9

of action in any significant way." *Miranda*, 384 U.S. at 444. *Miranda* provides that a defendant's statements "stemming from custodial interrogation" are inadmissible as evidence against him unless he is advised of certain constitutional rights under the Fifth Amendment. *Id.* ("Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."); *see* U.S. Const. amend. V; *Zavala*, 2017 Tex. App. LEXIS 1053, at *4.

The state counterpart is article 38.22 of the Texas Code of Criminal Procedure, which similarly provides that a defendant's oral statement "made as a result of custodial interrogation" is inadmissible in a criminal proceeding unless a recording is made of the statement, the defendant is warned during the recording but before making the statement that "any statement he makes may be used as evidence against him in court," and he knowingly, intelligently, and voluntarily waives those rights. Tex. Code Crim. Proc. art. 38.22, § 3(a)(1)-(2); *see Herrera*, 241 S.W.3d at 526 (stating that construction of "custody" for purposes of article 38.22 of Texas Code of Criminal Procedure is consistent with meaning of "custody" for purposes of *Miranda* and Fifth Amendment); *Zavala*, 2017 Tex. App. LEXIS 1053, at *4. Statements that do not "stem from custodial interrogation" are not precluded by article 38.22. Tex. Code Crim. Proc. art. 38.22, § 5.

The Texas Court of Criminal Appeals' *Dowthitt* case has identified four situations that may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law-enforcement officer tells the suspect that he cannot leave; (3) when law-enforcement officers create a situation that would lead a reasonable person to believe

that his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and law-enforcement officers do not tell the suspect that he is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). As to the first through third situations, the restriction on the suspect's freedom of movement must be to the degree associated with an arrest as opposed to an investigative detention. *Id*. Generally, individuals who are temporarily detained during an ordinary traffic stop are not "in custody" for purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *Zavala*, 2017 Tex. App. LEXIS 1053, at *5. A traffic stop that includes questioning and field-sobriety tests does not, without more, rise to the level of a custodial interrogation. *Berkemer*, 468 U.S. at 440-42; *State v. Stevenson*, 958 S.W.2d 824, 828-29 (Tex. Crim. App. 1997); *Zavala*, 2017 Tex. App. LEXIS 1053, at *5. Nevertheless, an ordinary traffic stop may escalate from a noncustodial detention to a custodial detention if the individual's freedom of movement is restrained to the degree associated with a formal arrest. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012); *Zavala*, 2017 Tex. App. LEXIS 1053, at *5.

Noncustodial investigative detentions and arrests both involve restraint on an individual's freedom of movement, but an arrest involves a comparatively greater restraint. *State v. Sheppard*, 271 S.W.3d 281, 290 (Tex. Crim. App. 2008); *Zavala*, 2017 Tex. App. LEXIS 1053, at *5. No bright-line test distinguishes investigative detentions from arrests; rather, courts consider several factors to determine whether an individual is in custody, including the amount of force displayed; the duration of the detention; the efficiency of the investigative process and whether it is conducted at the original location or the individual is transported to another location; the officer's expressed intent, i.e., whether he told the individual that he was under arrest or was being detained

11

only for a temporary investigation; and any other relevant factors. *Sheppard*, 271 S.W.3d at 291; *Zavala*, 2017 Tex. App. LEXIS 1053, at *5-6. A detention is not an arrest if the degree of incapacitation is no more than necessary to safeguard the officers and assure the suspect's presence during a period of investigation. *See Sheppard*, 271 S.W.3d at 291; *Zavala*, 2017 Tex. App. LEXIS 1053, at *6. Ultimately, courts must determine whether, given the circumstances surrounding the interrogation, a reasonable person would have perceived detention by law-enforcement officers to be a restraint on his movement comparable to the restraint of formal arrest. *Berkemer*, 468 U.S. at 441; *Herrera*, 241 S.W.3d at 525. Assessment of whether an individual is in custody is made on an ad hoc, case-by-case basis. *Dowthitt*, 931 S.W.2d at 255.

**None of *Dowthitt* custody situations shown on this record**

Dewbre did not specify which of the *Dowthitt* custody situations he contended were shown on this record, but his brief seems to address only two, "when the suspect is physically deprived of his freedom of action in any significant way" and when law-enforcement officers create a situation that "would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *See id.* None of the *Dowthitt* situations were shown on this record. Rather, the video shows that Dewbre was not deprived of his freedom of action by police beyond the extent necessary to conduct a brief investigation based on signs of intoxication, Dewbre was not transported from the scene, Dewbre was not told at 2:11:57 a.m. that he was being charged with DWI, and Officer Fallon informed Dewbre that he would be free to leave once he determined that he was safe to drive.

12

The trial court made a finding that "[Dewbre] believed that he was deprived of his freedom of movement." But Dewbre did not testify at the hearing on the motion to suppress, and this finding has no support in the record. Rather, the dash-cam video shows that when Dewbre was told that everything he had done that night was "on his consent," Dewbre stated, "I understand that."[4] In any event, what Dewbre believed is irrelevant to the custody determination, which is based on the objective circumstances of a defendant's questioning by police. *See Berkemer*, 468 U.S. at 442 (noting that only relevant inquiry is how reasonable man in suspect's position would have understood his situation); *Dowthitt*, 931 S.W.2d at 254; *State v. Chupik*, No. 03-09-00356-CR, 2011 Tex. App. LEXIS 7597, at *4 (Tex. App.—Austin Sept. 15, 2011, no pet.) (mem. op., not designated for publication).

Dewbre asserts that he was "restrained" and "hemmed in" by Officer Fallon's police car. The trial court made a finding that Dewbre's car was blocked in by "chocks"[5] and Officer Fallon's vehicle. But the custody inquiry turns on whether a suspect's freedom is restricted by law enforcement to the degree associated with an arrest—not merely whether there was a restraint—because even a noncustodial investigative detention involves restraint on an individual's freedom of movement such that the individual is not free to leave. *See Sheppard*, 271 S.W.3d at 290; *Zavala*, 2017 Tex. App. LEXIS 1053, at *5.

Dewbre points out that Officer Fallon took his keys. The trial court made a finding that Officer Fallon took Dewbre's keys from the vehicle. However, this Court has previously

---

[4] The video shows that Dewbre spoke at some length with police and never "asserted his right to remain silent or to have a lawyer present" as alleged in his motion to suppress.

[5] It is undisputed that the chock blocks were not placed by police.

13

determined that when police discover an unidentified man in a parked car who appears to be unconscious, the act of taking keys —and ordering him out of the vehicle and preventing him from reentering it—is part of an investigative detention, not a restraint on freedom of movement to the degree associated with an arrest. *See Horton v. State*, 16 S.W.3d 848, 851-52 (Tex. App.—Austin 2000, no pet.).

Next, Dewbre complains that police physically directed his movement away from his vehicle. The trial court made a finding that Officer Fallon led Dewbre away from his truck "to another part of the parking lot," and the court made a legal conclusion that Dewbre could not have felt free to leave because he had been "led away from the scene." By contrast, the video shows that Dewbre never left the scene. The video is consistent with Officer Fallon's testimony that he asked Dewbre to move "to get him to a safe spot where I can continue to interview him and ask him questions," that the officer stayed in the parking lot, and that he did not move Dewbre from his location. The court did not make any finding calling Officer Fallon's credibility into question. Further, this Court has previously noted that moving a suspect a short distance to further an investigation—e.g., having Dewbre walk the length of a few feet in the same parking lot before performing field-sobriety tests—is consistent with the purpose of an investigative detention, not an arrest. *See Moreno v. State*, No. 03-14-00596-CR, 2016 Tex. App. LEXIS 6868, at *14 (Tex. App.—Austin June 30, 2016, no pet.) (mem. op.) (citing *Castro v. State*, 373 S.W.3d 159, 166 (Tex. App.—San Antonio 2012, no pet.)).

Finally, Dewbre claims that a reasonable person would have believed that he was under arrest at 2:11:57 a.m.,when Officer Fallon "informed him that 'we are at that point of' being

14

charged with Driving While Intoxicated." The trial court concluded that Dewbre was in custody and that his responses after time stamp 2:11:57 were inadmissible. But the dash-cam video shows that Officer Fallon did not inform Dewbre that he was under arrest for, i.e., "charged with," a DWI offense until 2:37:39 a.m., when he began handcuffing him. The video also shows that minutes after Officer Fallon arrived, Dewbre spontaneously expressed confusion about his situation and stated, "I'm not too sure of what's going on." Officer Fallon responded, "I'm going to explain it to you," and proceeded to recount that he was called to the scene, that he made certain observations about Dewbre when he arrived, that he wanted to ensure Dewbre was all right, that operating a motor vehicle while intoxicated is illegal in Texas, and that he needed to ask Dewbre questions to make sure he was safe to operate a motor vehicle. Significantly, Officer Fallon tells Dewbre on the video that if he is safe to drive, he can go home; but first, Officer Fallon needed to make sure that Dewbre was safe to drive, and "if you are, you are." *Cf. Miranda*, 384 U.S. at 482 (noting that custodial interrogations do not necessarily afford innocent individuals with opportunity to clear themselves); *Jordy v. State*, 969 S.W.2d 528, 532 (Tex. App.—Fort Worth 1998, no pet.) (noting that officer did not tell defendant that he was free to leave).

Further, the remaining two *Dowthitt* situations—"when a law enforcement officer tells the suspect that he cannot leave" and "when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave"— were not shown on this record. Law-enforcement officers did not tell Dewbre that he could not leave; rather, Officer Fallon advised Dewbre that he would be free to go once Officer Fallon determined that Dewbre was safe to drive.

15

*See Dowthitt*, 931 S.W.2d at 255.  We conclude that none of the *Dowthitt* custody situations were shown on this record.

**No showing that Dewbre was in custody rather than detained**

Next, we consider the factors set forth in *Sheppard* for determining whether an individual is in custody.  *See Sheppard*, 271 S.W.3d at 291.  As to the first factor, the amount of force displayed, only two officers had any interaction with Dewbre at the scene, and the second one took no part in the investigation but explained and later administered the portable breath test to Dewbre.  Neither officer drew his weapon, neither handcuffed Dewbre until his arrest, and Dewbre stated that he understood his participation in the investigation was done with his consent.  The second factor, the duration of the detention, was brief.  The entirety of the events, from Officer Fallon's arrival at the scene at 2:07 a.m. to Dewbre's arrest at 2:37 a.m., spanned just thirty minutes.  *See Balentine v. State*, 71 S.W.3d 763, 770 n.7 (Tex. Crim. App. 2002) (concluding that less than one hour is reasonable period of detention).  The third factor we consider is the efficiency of the investigative process and whether it is conducted at the original location or the individual is transported to another location.  Here, the thirty-minute investigation was efficient, and during the investigation Dewbre was not transported from the parking lot where he was found.  The fourth factor we consider is the officer's expressed intent—i.e., whether he told the individual that he was under arrest or was being detained only for a temporary investigation.  Dewbre was not expressly told that he was under arrest until he was handcuffed.  Dewbre was not expressly told that he was being detained for a temporary investigation either, but he was informed that if he was safe to drive, he could go home.  Thus, Dewbre was effectively informed that his detention was only temporary,

16

until completion of an investigation about whether he could drive safely from the scene. Under the fifth factor, which allows for consideration of any other relevant factors, we note that the video shows the investigation occurred in a well-lit public parking lot, shared by a gas station, check-cashing business, and food truck, located adjacent to IH-35, not at a police station or some more-restrictive setting.

The circumstances of Dewbre's interaction with law enforcement, considered in their totality and from an objective standpoint, lead us to conclude that a reasonable person in Dewbre's situation would not "have perceived the detention by law enforcement officers to be a restraint on his movement comparable to the restraint of formal arrest." *See Berkemer*, 468 U.S. at 441; *Herrera*, 241 S.W.3d at 525. Thus, we conclude that the record does not support the trial court's conclusion that Dewbre was in custody when he made his statements to police, but at most shows that he was subjected to a brief investigative detention.

After considering the totality of the circumstances surrounding Dewbre's interaction with law enforcement, we conclude that the trial court abused its discretion by concluding that Dewbre met his burden of showing that his statements were the product of a custodial interrogation. *See Herrera*, 241 S.W.3d at 526; *Zavala*, 2017 Tex. App. LEXIS 1053, at *4-5. In the absence of a custodial interrogation, Dewbre was not entitled to warnings under *Miranda* and article 38.22 of the Code of Criminal Procedure. *Cf. Miranda*, 384 U.S. at 444; *see* Tex. Code Crim. Proc. art. 38.22, § 5. The lack of such warnings was not a violation of Dewbre's constitutional or statutory rights, and on this record, was not a proper legal basis for suppression of his statements.

Accordingly, the order granting suppression of Dewbre's statements, even when considered with due deference to the trial court's factual findings, was outside the zone of reasonable disagreement and constituted an abuse of discretion. *See Arguellez*, 409 S.W.3d at 662; *Dixon*, 206 S.W.3d at 590; *see Chupik*, 2011 Tex. App. LEXIS 7597, at *8 (concluding that court's order granting motion to suppress that was not supported by evidence was abuse of discretion). We sustain the State's first and third appellate issues.

## CONCLUSION

We reverse the trial court's order granting Dewbre's motion to suppress his statements and remand this cause for further proceedings consistent with this opinion.

---

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Reversed and Remanded

Filed: July 31, 2017

Do Not Publish