

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0241-20

### SUZANNE ELIZABETH WEXLER, Appellant

**v.**

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

KEEL, J., delivered the opinion of the Court in which KELLER, P.J., and HERVEY, RICHARDSON, YEARY, SLAUGHTER, and MCCLURE, JJ., Joined. WALKER, J., filed a dissenting opinion.    NEWELL, J., dissented.

O P I N I O N

Appellant challenges the admissibility of a statement she made to police during the execution of a search warrant, claiming that the statement was a product of custodial interrogation.   The court of appeals determined that Appellant made the statement before she was in custody, and it was properly admitted by the trial court.   *Wexler v. State*, 593 S.W.3d 772, 775 (Tex. App.―Houston [14th Dist.] 2019).   We granted Appellant's

petition for discretionary review to decide whether the court of appeals erred in this determination. We conclude that Appellant failed to meet her burden of showing that she was in custody when she made the statement, and we affirm the judgment of the court of appeals.

## I. Background

Police were told that the house at 318 Avenue A in South Houston was a site of drug dealing. During a week of surveillance, narcotics K-9 officers arrested four people leaving the house in possession of methamphetamine, and police got a warrant to search the house.

The search warrant was executed with the help of uniformed and plainclothes officers, narcotics K-9 units, and the Harris County Sheriff's Office High Risk Operations Unit (HROU), a SWAT-like team whose function was to secure the residence and detain any occupants. While uniformed officers in marked police cars blocked both ends of the street, 20 to 25 HROU officers surrounded the house, announced via loudspeaker from an armored vehicle that they had a search warrant, and directed occupants to exit the house. Appellant came out and was detained by HROU officers and put in the back of a patrol car.

While HROU did a protective sweep of the house, narcotics detective Jerome Hill questioned Appellant. Hill suspected that Appellant and someone named Jimmy were involved in distributing drugs, but Hill did not tell Appellant that she was a suspect, and he did not give her any warnings. The encounter was not recorded, but Hill testified that

he said, "We have a search warrant. Tell me where the narcotics are. It will save us some time doing the search. We're going to find it no matter what." Appellant told him that the drugs were "in her bedroom in a dresser drawer." Hill and other narcotics officers went into the house to conduct the search and found 25.077 grams of methamphetamine in the dresser drawer, marijuana packaged for individual sale, drug paraphernalia, scales, cash, and handgun magazines and ammunition. Hill arrested Appellant for possession with intent to distribute a controlled substance.

At trial Appellant objected to the admission of her statement that the drugs were in her bedroom in a dresser drawer. She claimed the statement was hearsay and that it should be excluded because Hill was trying to extract a confession and obtain evidence from her without giving her any warnings. The State responded that it was a statement by a party opponent or a statement against interest and that Appellant was detained but not in custody when she gave the statement. After voir dire examination of Hill and arguments of the parties outside the presence of the jury, the trial court overruled Appellant's objection and admitted her statement.

Appellant's friend testified in her defense. He said Appellant and her boyfriend, Jimmy, had broken up and that she had moved out of the house months before the search; she was in the house on the day of the search only to retrieve some of her belongings, and the drugs belonged to Jimmy. During deliberations, the jury asked for clarification of Detective Hill's testimony and sent out a note asking, "When Ms. Wexler was asked by Mr. Hill where the drugs would be found, was her response 'my bedroom' or 'the

bedroom' or another variant?"   The court read back to the jury Hill's testimony:   "The defendant told me it would be in her bedroom in a dresser drawer."   The jury found Appellant guilty, and the trial court sentenced her to 25 years in prison.

## II.   Court of Appeals

Appellant claimed on appeal that she was in custody when she was placed in the back of the patrol car and that she should have been given Article 38.22 and *Miranda* warnings before Hill questioned her.   *Miranda v. Arizona*, 384 U.S. 436, 479 (1966); TEX. CODE CRIM. P. art. 38.22.   She said her statement to Hill should have been excluded because she was not given the warnings.   *Wexler*, 593 S.W.3d at 777.   The court of appeals determined that the statement was properly admitted because Appellant was temporarily detained rather than under arrest when she made the statement.   *Id.* at 780.

The fact that Appellant's freedom of movement was restricted when she was placed in the patrol car did not establish that she was under custodial arrest because a person under detention also may have her freedom of movement restricted but to a lesser degree.   *Id.* at 779.   There was no evidence that Appellant was aware of the presence of the armored vehicle or the number of officers on the scene, or that access to the street had been blocked.   *Id.* at 780.   Even if she were aware, this would show only one factor— the amount of force used—to determine custody.   *Id.* (citing *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008)).   There was no evidence that police used physical force on Appellant, handcuffed her, threatened her, displayed a firearm, or even

spoke to her in a hostile tone. *Wexler*, 593 S.W.3d at 780.

There was evidence that an investigation was underway and that Appellant was detained during a protective sweep of the house, but the detention was brief, Appellant was questioned on scene, Hill was the only officer to question her, and he did not tell her that she was a under arrest or even a suspect. *Id.* (citing *Herrera v. State*, 241 S.W.3d 520, 525–26 (Tex. Crim. App. 2007) ("The subjective belief of law enforcement officials about whether a person is a suspect does not factor into our 'custody' determination unless an official's subjective belief was somehow conveyed to the person who was questioned.")). When Appellant was questioned, drugs had not yet been found, and Hill did not have probable cause to arrest her. *Wexler*, 593 S.W.3d at 780.

The court of appeals concluded that the record supported the trial court's implied finding that Appellant was temporarily detained and not arrested when Hill questioned her, so Hill was not required to warn her under *Miranda* or Article 38.22, and the trial court did not err in admitting her statement. *Wexler*, 593 S.W.3d at 780.

The dissenting opinion asserted that under the facts of the case, a reasonable person would have believed she was under restraint to the degree associated with an arrest. *Id.* at 783 (Hassan, J., dissenting) (quoting *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)). "Appellant left the protections of a private home only after being instructed by an organized and well-equipped amassment of law enforcement personnel." *Wexler*, 593 S.W.3d at 784 (Hassan, J., dissenting). According to the dissent, these facts demonstrate that the police created a situation that would have led a

reasonable person to believe her freedom had been significantly restricted, and Appellant was entitled to *Miranda* warnings. *Id.* at 785 (citing *Dowthitt*, 931 S.W.2d at 255).

## III. Standard of Review

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion and should be reversed only if it is outside the zone of reasonable disagreement. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018); *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014). Custody is a mixed question of law and fact that does not turn on credibility and demeanor unless the witness testimony, if believed, would always decide the custody question. *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013). We apply a bifurcated standard of review, giving almost total deference to the trial court's factual assessment of the circumstances surrounding the questioning and reviewing *de novo* the ultimate legal determination of whether the person was in custody under those circumstances. *Id.*

When a trial court denies a motion to suppress and does not enter findings of fact, we view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Herrera*, 241 S.W.3d at 527. The party that prevailed in the trial court is afforded the strongest legitimate view of the evidence, and all reasonable inferences that may be drawn from that evidence. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

## IV. *Miranda* and Article 38.22

*Miranda* and Article 38.22 deem statements produced by custodial interrogation to be inadmissible unless the accused is first warned that she has the right to remain silent, her statement may be used against her, and she has the right to hire a lawyer or have a lawyer appointed. *Miranda*, 384 U.S. at 479; TEX. CODE CRIM. P. art. 38.22. In addition, Article 38.22 requires a warning that the accused has the right to terminate the interview at any time. *Herrera*, 241 S.W.3d at 526. The warnings are required only when there is custodial interrogation. *Id.*

A custody determination requires two inquiries: the circumstances surrounding the interrogation and whether a reasonable person in those circumstances would have felt that she was not free to leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). "Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test" to determine whether there was restraint on freedom of movement of a degree associated with arrest. *Id.* The ultimate inquiry is whether, under the circumstances, a reasonable person would have believed that her freedom of movement was restricted to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322 (1994); *Dowthitt*, 931 S.W.2d at 254. The "reasonable person" standard presupposes an innocent person. *Dowthitt*, 931 S.W.2d at 254 (citing *Florida v. Bostick*, 501 U.S. 429, 438 (1991)).

*Dowthitt* outlined four general situations that may constitute custody: (1) the suspect is physically deprived of her freedom of action in any significant way, (2) a law enforcement officer tells the suspect that she cannot leave, (3) law enforcement officers

create a situation that would lead a reasonable person to believe her freedom of movement has been significantly restricted, or (4) there is probable cause to arrest, and law enforcement officers do not tell the suspect that she is free to leave.   931 S.W.2d at 255.

For the first three situations, the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. *Id.*   For the fourth situation, the officer's knowledge of probable cause must be manifested to the suspect, and custody is established only if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe she is under restraint to a degree associated with an arrest.   *Id.*; *Stansbury*, 511 U.S. at 325. An officer's subjective intent to arrest the suspect is irrelevant unless that intent is communicated or otherwise manifested to the suspect.   *Dowthitt*, 931 S.W.2d at 254 (citing *Stansbury*, 511 U.S. at 324-25 (police knowledge or beliefs bear on the custody issue only if they are conveyed to the suspect)).

To evaluate whether a reasonable person in the suspect's situation would have felt that there was a restraint on her freedom to a degree associated with arrest, the record must establish the circumstances manifested to and experienced by her.   *State v. Ortiz*, 382 S.W.3d 367 (Tex. Crim. App. 2012) ("only the objective circumstances known to the detainee should be considered in deciding what a reasonable person in his position would believe.").   *See also Thompson*, 516 U.S. at 113 ("if encountered by a 'reasonable person,' would the identified circumstances add up to custody"); *Berkemer v. McCarty*,

468 U.S. 420, 442 (1984) ("[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.").

It is the defendant's initial burden to establish that her statement was the product of custodial interrogation. *Herrera*, 241 S.W.3d at 526; *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005).

## V. Analysis

Appellant had to do more than object to the admission of her statement; she had to show that it was a product of custodial interrogation. *Herrera*, 241 S.W.3d at 526. She failed to do so.

## A. The Circumstances Surrounding the Interrogation

It is undisputed that HROU announced over a loudspeaker that the house was being searched and that any occupants must exit. Appellant exited and was seated in the back of a patrol car while HROU did a protective sweep of the house. Narcotics officers had not yet searched the house when Hill asked Appellant about the drugs in the house, and Hill arrested Appellant after the drugs were found. The record supports findings that the detention was brief, the investigation was efficient, Hill was the only officer to question Appellant, Appellant was not removed from the location of the search, and she was not told she could not leave. Viewing the evidence in the light most favorable to the trial court's ruling, Appellant failed to show that the objective circumstances of her detention would lead a reasonable person to believe that her freedom was restrained to a degree associated with an arrest.

Appellant argues that the record demonstrates that she would have been aware of the large contingent of officers on the scene, but she offered no evidence of her awareness of the police presence, and the trial court was not required to infer it. *See York v. State*, 342 S.W.3d 528, 544 (Tex. Crim. App. 2011) (with respect to suppression issues, the trial judge can draw rational inferences in favor of either party). Although Hill testified about the various law enforcement entities that helped execute the warrant, no one testified about whether Appellant would have been able to see them. For example, Hill testified that the HROU had an armored vehicle and over 20 officers who "surrounded" the house, but he did not testify where the vehicle was or where the officers were positioned. Hill testified about the presence of narcotics officers on the scene, but he did not testify about their number or their location. Hill testified that patrol cars blocked the ends of the street, but he did not testify about their distance from the house or whether they were visible to Appellant at any point.

## B. Would a reasonable person in those circumstances have felt that she was not free to leave?

Appellant says the court of appeals' majority failed to consider whether a reasonable person in her circumstances would have perceived that her physical freedom was restricted to the degree associated with a formal arrest. She argues that custody for *Miranda* purposes does not turn on the reasonableness of the police actions under the Fourth Amendment or merely a distinction between investigative detention and full arrest. She maintains that the court of appeals erred in focusing on the reasonableness of

the actions of the police and relying on *Sheppard*, 271 S.W.3d at 291.

We agree with Appellant that the majority opinion did not clearly articulate the "ultimate inquiry" pertinent to the custody question for *Miranda* purposes—whether a reasonable person in the defendant's circumstances would have believed that her freedom of movement was restricted to the degree associated with a formal arrest. *Stansbury*, 511 U.S. at 322. And *Sheppard*, a Fourth Amendment case, did not deal with that "ultimate inquiry." *Sheppard*, 271 S.W.3d at 283 (describing issue before the Court as "whether a person is 'arrested' for purposes of the Fourth Amendment if he is temporarily handcuffed and detained, but then released.") (footnote omitted).

But the majority below correctly recited the reasonable person standard and the need to examine "all the objective circumstances surrounding the questioning." *Wexler*, 593 S.W.3d at 778. It relied on cases addressing custody for *Miranda* purposes. *Id.* at 778-79 (citing, e.g., *Herrera*, 241 S.W.3d at 525, and *Dowthitt*, 931 S.W.2d at 255). And it looked not only at the actions of the police, but also at whether Appellant was aware of those actions. *Wexler*, 593 S.W.3d at 780. Ultimately, its holding was in line with *Berkemer*, 468 U.S. 420.

In *Berkemer*, the Supreme Court considered whether a traffic stop rendered a person in custody for *Miranda* purposes. 468 U.S. at 435. A traffic stop significantly curtails the freedom of the driver and passengers and is a seizure for Fourth Amendment purposes, but due to the nonthreatening, noncoercive aspect of the detention, a traffic stop usually does not constitute custody for *Miranda* purposes. *Berkemer*, 468 U.S. at 436-

40. This is true even though a person temporarily detained pursuant to a traffic stop would not feel free to leave. *Id.* at 436. A motorist detained pursuant to a traffic stop is entitled to *Miranda* protections if he is subjected to treatment that renders him in custody for practical purposes; *Miranda* safeguards become applicable as soon as a suspect's freedom is curtailed to a degree associated with a formal arrest. *Berkemer*, 468 U.S. at 440. In concluding that the officer's treatment of Berkemer was not the functional equivalent of a formal arrest, the Court considered the short duration of the detention, its public setting, and the fact that Berkemer was not informed that the detention would not be temporary. *Id.* at 441-42.

Similarly, Appellant's detention was of short duration, it was in a public setting, and she was not told that her detention would not be temporary. There was no evidence that Appellant was aware of an overwhelming police presence. Accordingly, the court of appeals correctly held that Appellant failed in her burden of proving that she experienced the functional equivalent of a formal arrest.

Appellant relies on *Ortiz*, but it is distinguishable. Ortiz was stopped for a traffic offense and interrogated by an officer named Johnson about drug possession. *Ortiz*, 382 S.W.3d at 369-70. By the time Ortiz made the incriminating statements that the bundle under his wife's skirt was cocaine, he and his wife were faced with at least two police cars and three officers, they had been handcuffed and frisked, the bundle had already been found, Ortiz knew it had been found, Ortiz knew that Johnson knew that Ortiz was on probation for cocaine possession, and Johnson's several questions and their timing

conveyed his suspicion that Ortiz and his wife were acting in cahoots with respect to the drugs taped to her leg. *Ortiz*, 382 S.W.3d at 370-71, 374 fn.32. Given the objective circumstances, a reasonable person in Ortiz's position would have believed he was in custody when he made the incriminating statement. *Id.* at 377.

Appellant points to the number of officers she faced as compared with the number faced by Ortiz and argues that the show of force was overwhelming, but unlike the record in *Ortiz*, which included video of the traffic stop, *id.* at 369, the record here does not show what Appellant saw or knew about the show of force arrayed against her. Appellant also argues that Hill's question of her was like the questions posed to Ortiz because it suggested that Hill suspected her of drug possession. But whereas Hill posed a single question before any search took place, Johnson repeatedly asked Ortiz about drugs, and the questions yielded an incriminating response only after another officer told Johnson in Ortiz's presence that they had found "something" under Mrs. Ortiz's skirt. *Id.* at 375. That announcement was a relevant consideration only because Ortiz "apparently heard it[.]" *Id.*

Significantly, the *Ortiz* opinion's custody analysis scrupulously divorced the circumstances that were known to Ortiz from those that were not and considered only those known to him. *See, e.g., id.* at 370 fn.8 (declining to consider the request for backup because "it is unclear whether the appellee could have overheard" it); *id.* at 370 fn.11 (declining to consider that the bundle taped to Mrs. Ortiz's leg was known to be cocaine because "that information was not related to Johnson within the appellee's

earshot"); *id.* at 374 fn. 32 (noting that Ortiz knew that Johnson knew that Ortiz was on probation for a drug offense, making it a relevant consideration in the custody analysis). That scrupulousness underscores that the suspect's knowledge of the circumstances surrounding the interrogation is crucial to the custody analysis. But in this case, that crucial element is missing, and the trial court was not compelled to fill in the evidentiary gaps by inference.

## VI. Conclusion

Appellant did not meet her burden to establish on the record facts showing that her statement to Hill was the product of custodial interrogation, and the trial court properly admitted the statement. The judgment of the court of appeals is affirmed.


Delivered: June 30, 2021
Publish